By the Court—Bosworth, Ch. J.
At the date of the policy (December 4,1857,) the assured resided in the City of Hew York. The policy does not so state, nor is the fact directly proved. He died on the 18th of May, *409 1858, having left a last will and testament, which was duly proved before the Surrogate of the County of Kew York, and letters testamentary were issued thereon to the execu-. trix and executor therein named, July 30th, 1858. The plaintiff and John L. Mason, (since deceased,) qualified as executrix and executor. The fact of the residence of all these parties in the City of Hew York was so well known that no mention appears to be made of it, either in the policy, pleadings, proofs, or points made on this appeal. Of course the insured property was not supposed to be occupied by the testator personally when the policy was made, but it'was known that it was not.
It does not appear that any representation was made that the testator owned it in fee, nor does it appear that any questions were asked on the subject. The description of the property, in the policy as “ his frame dwelling house” and “Ms frame barn,” would not in case of a loss in his lifetime, make it indispensable to his right to recover, that he should prove he owned them in fee. (The Ætna Fire Ins. Co. v. Tyler, 16 Wend., 385.)
His death did not terminate the policy. (Burbank v. Rockingham Mut. Ins. Co., 4 Foster, 550.) If he had conveyed the property in his lifetime, taking back, eo instanti, a mortgage to secure the purchase-money, he would, notwithstanding, have had a continuous interest in the property. That fact would not have forfeited the policy, under the clause, which declares that “in case of any transfer or termination of the interest of the insured ” in tMs policy, “ either by sale or otherwise,” without the consent of the corporation, manifested in writing, “this policy shall from thenceforth be void and of no effect.” The provision in this policy, on this subject, is in the words of that in Smith v. Saratoga M. F. Ins. Co., (1 Hill, 497,) and it was there construed to refer to a transfer of interest in the policy» and not to a change of interest in the property insured.
Hor would a conveyance by the assured in his lifetime, and taking back, eo instanti, a mortgage to secure the pur *410 chase-money, have been a bar to a recovery, in case of a subsequent loss in his lifetime, and during the term for which the property was insured. (Morrison v. Tennessee M. & F. Ins. Co., 18 Missouri, 262; Norcross v. Insurance Companies, 17 Penn. St., 429.)
There is no provision in the policy which, in terms, declares that it should, in such a contingency, become null and void. On general principles, the fact of a change in the nature or extent of the assured’s interest in the property, would not invalidate the policy, the interest having been continuous, from the inception of the policy to the time of the loss, and the risk not having been increased.
We think that the rights of the present plaintiff to recover, are quite as clear, if not more free from doubt, than those of the testator would have been were he living, and a certificate of renewal had been issued to him after conveying, and taking a mortgage of the premises to secure the purchase-money, and a loss had occurred after such renewal.
After the death of the testator, and on the third of December, 1858, the company issued a certificate of the renewal of the policy for one year, on a receipt of the premium therefor, from “ the-estate of Anson G. Phelps, Jr.”
On the 30th of November, 1859, a further or second certificate of a renewal of the policy for one year from the fourth of December, 1859, was executed and delivered, on a receipt of the premium therefor from “ Mrs. Jane G. Phelps, Executrix, and John L. Mason, Ex'r of A. G. Phelps, Jr.”
On the 3d of December, 1860, (John L. Mason having died in the meantime,) the company issued a further certificate of the renewal of the policy for one year from the 4th of December, 1860, on the receipt of the premium therefor “ from Mrs. Jane G. Phelps, &c.”
The loss occurred on the 14th of February, 1861.
Ho representations were made, and no questions were asked at the time of either renewal, as to the nature or *411 extent of the interest designed to be protected by extend ing the policy and continuing it iu force.
The company knew that Anson G. Phelps, Jr., was dead, and the renewals' were not granted, to keep him insured on property owned by him in fee; whether the estate had been devised by his will, to his executors, in fee, upon specified trusts, or whether they had been clothed with authority to sell, and had exercised that authority, and in so doing had taken a mortgage to secure the purchase-money, "the company did not consider it important to inquire. The plaintiff did not misrepresent, and has not practiced bad faith, and has done nothing subsequent to any renewal to increase the risk.
Since the renewal granted to “Mrs. Jane G. Phelps, &c.,” alone, there has been no change in her condition as to the property; she was then a mortgagee of the premises, under a mortgage to her as executrix, and continued to be such up to the time of the loss.
Executors, as such, are merely representatives of the personal property of a deceased; as mere executors, they have no interest in or control over the real estate of their testator. When property is devised to executors in trust, they act quo ad hoc as trustees, and account for their acts in regard to the real estate so devised, as trustees, (2 R. S., 82, § 6; Id., 94, §§ 65 and 66.) By chap. 272, of the Laws of 1850, the powers of the Surrogate were extended, in the matter of settling the accounts of trustees created by a last will and testament.
Whatever may be the legal effect of granting the several renewals, under the circumstances under which they were made; and whatever may be the obligation thereby imposed on the insurance company, there are no words found either in the policy or in the renewal certificates which, (being construed in their usual acceptation,) declare in terms, such legal effect, or the nature and extent of such obligation.
Looking at the parties intended to be insured by the graht of the renewal certificates, and considering the facts, *412 that executors merely as such, can have no interest in the real estate owned by the testator at the time of his decease, but may be made by the will trustees of the real estate, with a power to sell on credit, or may be invested with a naked power to sell and convert, and to sell wholly or in part on credit, and that no representations were made or questions asked; the insurance company must be deemed to have intended to insure, and to have insured such interest in the real estate in question as had become vested in the executors by the terms of the will, and 'by their lawful acts in the due exercise of the powers conferred on them thereby and the grant of letters testamentary to them thereon.
The risk originally taken not being increased by this construction of the policy, and this construction not being opposed to anything expressed in it, or by the fair import of either of its provisions, this construction should be maintained, as obviously conforming to the intent of the insurer and insured, manifested by their acts and thé' circumstances under which they were performed.
The judgment should be affirmed.