## KITTS and CHANDLER *vs.* THE MASSASOIT INSURANCE COMPANY.

Where, upon a sale by one of the members of a firm, of all his interest in the partnership property and effects, there was no assignment or transfer, of any kind, of a policy of insurance upon the partnership property, to the purchaser, or any delivery of the policy, or of a certificate of renewal, to him; *Held* that, although the language of the instrument of sale, taken by itself, was broad enough to include the policy as one of the *choses in action* of the firm, yet as it was manifest from the whole transaction and its surroundings that no such thing was intended, the policy did not pass by the instrument.

Where two instruments are executed and delivered at the same time—one by the vendor and the other by the purchaser—they are to be construed together; and the general language of the one will be construed and controlled by the other, when it is necessary to ascertain the intention of the parties; and the general language of the one will be controlled by the specific language of the other.

The sale of property, and taking back a mortgage to secure the purchase money, does not " change the title," within the meaning of a condition in a policy of insurance that in case of *any change of title* in the property insured, the policy shall cease and determine.

APPEAL from a judgment rendered for the plaintiffs, upon a trial before a jury, at the circuit.

The action was brought upon a policy of fire insurance, issued by the defendant to the plaintiffs, to the amount of $1000. Upon the trial, at the Oswego circuit, it appeared that the plaintiffs, on the 14th of June, 1864, were copart-

ners in the business of carrying on a steam saw and shingle mill at Oswego, and on that day the defendant insured their stock in the sum of $1000 for one year, by a policy of that date.

The policy contained on its face, and as one of its conditions, the following: " 4. Policies of insurance subscribed by this company shall not be assignable without the consent of the company expressed, and indorsement made thereon. In case of assignment without such consent, whether of the whole policy, or any interest in it, the liability of the company in virtue of such policy shall thenceforth cease. * * * *And in case of any change of title in the property hereby insured . * * this policy shall cease and determine.*"

On the 14th of June, 1865, the policy was renewed for one year, by a certificate of renewal in the ordinary form.

On the 30th of September, 1865, the plaintiff Kitts sold to one William H. Wilmot his interest in the partnership effects of said firm, and Wilmot was to succeed him in said firm, under some other firm name; and two instruments in writing were made and executed between Kitts and Wilmot, one by each of them, and were simultaneously delivered. The agreement executed by Kitts, so far as it is material, recited that Kitts, " in consideration of the sum of twenty thousand dollars to me in hand paid by William Wilmot of the same place, and in consideration of the agreement on the part of said Wilmot, hereinafter contained, have granted, bargained, sold and conveyed, and do hereby bargain, sell, grant and convey unto the said Wilmot, his executors, administrators, heirs and assigns forever, all my interest as a member of the firm of Kitts & Chandler, in the goods, chattels, interest in real estate, leases, personal property, fixtures, machinery, accounts, bills, bonds, notes, mortgages, claims, choses in action, and all and everything and species of property, of any and every name and nature whatever of the said firm of Kitts

& Chandler, (not including the Miller boat yard,) hereby intending to place him in all respects, as to the property, interests and matters of said firm, in my shoes; and such sale is made to him subject to the payment of all the liabilities and debts owing by said firm, and all claims and rights of action against said firm, hereby intending also to place said Wilmot in all respects, as to debts and liabilities of, and claims, demands and causes of action against said firm, in my own shoes, (not including the Kitts, Chandler & Miller boat yard,) and said Wilmot, by accepting this bill of sale and conveyance, assumes and agrees to pay the debts of said firm to the same extent that I would be liable thereon, and to keep me forever harmless therefrom, and from all trouble, costs, damages, losses and expense in relation to, or on account of, any liabilities, claims, actions and causes of action, debts, &c., of every nature against said firm; he intending by accepting this, and agreeing to stand completely in my shoes, in all respects in regard to everything relating to said firm, and the property, business, contracts, liabilities, and everything of every name and nature, and to keep me as aforesaid forever harmless thereupon in everything and respect."

The agreement executed by Wilmot, after reciting the sale to him by Kitts, and that he was to pay all the partnership debts for which Kitts was liable, and indemnify and save him harmless therefrom; and that he was indebted to Kitts for the purchase money in the sum of $20,000, to be paid in installments, the first of which, amounting to $3500, was payable in one year from that date, and the residue of the $20,000 in installments from time to time, thereafter, and running through a term of five years, and that he intended to continue in the said business; it continued, that " for the purpose of securing the payment of said notes, and the performance of said agreement on my part, I do hereby sell, assign, and transfer and convey to said Kitts all the interest in the property,

Kitts *v.* Massasoit Insurance Company.

effects &c. of said firm, by him as aforesaid sold, assigned and conveyed to me; and I further, for such security, do hereby give him a lien, by way of mortgage, upon all my interest in the property and effects of said new firm, of every name, nature and description, whether the same is now in existence or not, at all times, whenever the same shall be acquired by or shall accrue to said firm, and agree to keep it insured for benefit of said Kitts; *present insurance to be held by him.* And if said notes shall be paid at maturity, and said agreement shall be promptly and fully performed in every respect, without default, then said sale, &c., and mortgage lien, shall cease and be void."

It then provided that in case of any default on the part of Wilmot, or if Kitts should at any time deem himself insecure, of which he was to be the judge, then he was authorized to take all of the property into his possession, and to sell the same at public or private sale, and out of the proceeds to reimburse himself fully for the amount due, and for any liabilities not discharged by Wilmot; and for all trouble, loss, damages, costs and expense on account thereof, or on account of taking, keeping and selling the property, including attorney's and court fees, and the balance, if any, to be paid in to Wilmot.

The agreements were executed between Wilmot and Kitts, without the consent of the defendant.

On the 15th day of December, 1865, the insured property was destroyed (by an accidental fire) to an amount much larger than the amount insured by the defendant. No part of the $20,000 had been paid to Kitts by Wilmot; and the proofs of loss, &c., were conceded to be regular. It was also conceded that there was no question of fact for the jury, but that the case turned upon questions of law, upon the facts proven and admitted, and the defendant's counsel thereupon moved for a nonsuit, and that the complaint be dismissed, on the following grounds:

*First.* That by the terms of the bill of sale introduced in

evidence, from Kitts to Wilmot, the policy of insurance in question was sold and transferred to Wilmot, and being done without the consent of the insurance company, such transfer avoided and terminated the policy, under and by the terms of the fourth condition thereof.

*Second.* That by the sale by Kitts of his interest in the insured property to Wilmot, under the bill of sale read in evidence, the said policy, from the time of such sale and change of possession, ceased and determined, and that no recovery could be had on the policy in question, by the plaintiffs.

The court overruled each of the said objections and grounds for nonsuit, and directed the jury to find a verdict for the plaintiffs for the amount of said insurance. To which ruling and decision, and to each and every part thereof, the counsel for the defendant excepted.

The jury thereupon found a verdict for the plaintiffs for the sum of one thousand and fifty-six dollars and thirty-five cents.

*Edwin Allen,* for the appellant.

*Marsh & Webb,* for the respondents.

*By the Court,* FOSTER, J. There was no assignment or transfer of any kind, of the policy of insurance, or of any interest therein, from Kitts to Wilmot. It is not claimed that any actual delivery of the policy, or of the certificate of renewal, was made to him; and although the language of the instrument executed by Kitts, taken by itself, is broad enough to include the policy as one of the *choses in action* of the firm, yet it is manifest from the whole transaction and its surroundings, that no such thing was intended.

By the agreement, the interest of Kitts in all the personal property, and all the available assets, passed into the possession of Wilmot, and no part of the $20,000 purchase

money was paid, and none of it was payable until one year thereafter; while, by the terms of the renewal receipt, the policy would .expire within nine months; and why should Kitts assign *that* also, and allow Wilmot, in case of a fire, to appropriate the insurance money to his own use, and thus reduce the security of Kitts, not only for the purchase money, but for the payment by Wilmot of the previous liabilities of the firm of Chandler & Kitts? There was no reason why Wilmot should have the interest of Kitts in the policy. It formed no part of the assets which could be made available in the business of the firm; but was intended to secure against a loss which would be likely, for the time being at least, to break it up; and if the property should be destroyed by fire, there was the greater reason why Kitts should hold it, as the ability of Wilmot to pay would thereby be decreased.

It is claimed, however, on the part of the defendant, that the policy did pass to Wilmot, and it was retransferred to Kitts by the instrument executed by Wilmot; and it is also claimed that such reassignment does not aid Kitts, because his interest in the policy became void as against the defendant, the moment he executed the transfer, and that if there was an absolute transfer of it from Kitts to Wilmot, it must be conceded that the subsequent reassignment to Kitts does not help the plaintiff's case.

By the terms of the instrument executed by Wilmot, he agreed to keep all the property "insured for the benefit of said Kitts; *present insurance to be held by him*." If these words had been inserted in the instrument executed by Kitts, either after the words of conveyance therein to Wilmot, or elsewhere, there would be no question that it was intended that the interest of Kitts in the policy should not pass to Wilmot, but that on the contrary it should be retained *and held by* Kitts; because, construing the whole instrument together, such intent would be palpable. Or, if all that is contained in both instruments had been con-

tained in one, and had been executed by both parties, then no doubt could be entertained that it was the intent of both parties that the policy should not pass, even for an instant, to Wilmot; and yet, upon the plainest principles of construction, both instruments having been executed and delivered at the same time, they are to be construed together, and the general language of the one will be construed and controlled by the other, when it is necessary to ascertain the intent of the parties; and the general language of the one will be controlled by the specific language of the other. (*Stow* v. *Tifft*, 15 *John.* 463, *and per Selden, J., in Hitchcock* v. *North Western Ins. Co.*, 26 *N. Y. Rep.* 70.)

The more important question is whether, by the arrangement between Kitts and Wilmot, there was "*any change of title in the property insured,*" within the meaning of the condition of the policy? It is not an answer to this objection, that Kitts retained such an interest in the property as was insurable, for the question turns upon the construction of the words above set forth.

There is no doubt that if Kitts had so conveyed the property to Wilmot as to pass, absolutely and unconditionally, all his interest therein, the policy as to him would be void; but the question arises upon the construction of the two instruments taken together; and in aid of the proper construction, we are to make every intendment, in case of doubt, in favor of maintaining the liability of the company, because the condition relied upon is intended to operate as a forfeiture, and is to be construed strictly. (26 *N. Y. Rep.* 69.)

No case has been cited, and I have found none, where a construction has been given to the words "any change of title;" but in *Hitchcock* v. *The North Western Insurance Company* (26 *N. Y. Rep.* 68) it was held that the conveyance of a vessel, accompanied by a reconveyance, by way of mortgage, does not work a *transfer* or *termination* of the mortgagee's interest, within the meaning of a marine pol-

icy providing that it should be void if done without the consent of the insurer.   Most clearly the same rule of construction of a condition, which is to be applied in the case of a marine policy, upon a clause like this, is applicable to the case of a fire insurance; and it seems to me that the decision in that case is controlling in this.

The words there were, " any *transfer* or *termination*," and when construed together and upon ordinary rules of construction, in a case where no forfeiture was involved, it would seem that when the words transfer or termination were used, the word transfer meant some act which did not terminate the interest of the insured; and yet the court held, in substance, that if the transfer did not entirely terminate the interest of the insured, the policy held good.

Now, if the sale and taking back a mortgage for the purchase money, did not *transfer* the title, how can it be said that such an act *changes* the title?   Can there be a change of title within the meaning of the policy, by an act which does not *transfer* the title—a change without a transfer?

The same rule which was held by the Court of Appeals in the case of *Hitchcock* v. *The North Western Insurance Company*, was applied in the case of a fire policy in *Phelps* v. *The Gebhard Fire Insurance Company*, (9 *Bosw.* 404.)   I think there was no change of title to avoid the policy, and that the judgment should be affirmed.

[ONONDAGA GENERAL TERM, October 1, 1867.   *Bacon, Foster Mullin* and *Morgan* Justices.]