JOHN BATES *v.* COMMERCIAL INSURANCE COMPANY.

JOHN BATES *v.* MAGNOLIA INSURANCE COMPANY.

JOHN BATES *v.* CENTRAL INSURANCE COMPANY.

JOHN BATES *v.* BUCKEYE INSURANCE COMPANY.

Bates sold the Louisville Theater to Fuller, retaining a lien by the deed for $26,000 of the purchase money, and providing that Fuller should keep on the property insurance in $10,000, loss, if any, payable to Bates, on which policies Bates brings suit. Before the fire, Fuller sold and conveyed the property for $75,000 to Mark Munday, retaining by the deed a lien for $50,000, with the condition that Munday should keep the property insured in $10,000, loss, if any, payable to Fuller.

*Held,* that the interests of a mortgagee and mortgagor are entirely distinct, and that the insurance procured by Munday, under his arrangement with Fuller, did not avoid the policies for $10,000 procured by Fuller under the arrangement with Bates, notwithstanding the provision in said policies that "in case the insured or assigns should make other insurance without consent of the defendants," the policies should be void.

That the word "assigns," in this clause, means assignees of the policy, and not assignees of the property.

That the sale to Munday by Fuller, he retaining a lien for $50,000 of the purchase money, did not avoid the policy issued by one of the defendants to Fuller, which contained the clause that "a transfer or change of interest of the insured, either by sale or otherwise, without consent of the defendant" should avoid the policy. The interest was not "transferred or changed" within the meaning of that clause in the policy.

*Logan & Randall,* and *Jordan, Jordan & Williams,* for plaintiff.

*Lincoln, Smith, Warnock & Stephens,* for defendants.

The following is Judge Taft's opinion, delivered at the December Special Term :

TAFT, J.    These four actions are each founded on a policy of insurance for $2,500, on the theater in Louisville, formerly owned by the plaintiff, but owned, when the original policies of which these are renewals were issued, by Geo. F. Fuller.

The petitions are alike, and severally set out that the plaintiff sold the theater to Geo. F. Fuller, reserving a small rent of $100 per annum, and a lien for $26,250 of balance of the purchase money; and that the deed of transfer also contained a clause providing that Fuller should keep the property insured for four years in the sum of $10,000, and assign the policy to plaintiff to secure the payment of Fuller's indebtedness to him.

That Fuller procured the insurances in the several companies of several defendants, $2,500 in each; that the premises have been burned; that the plaintiff has fulfilled and performed all the conditions, and asks judgment for the several amounts.

The first, second, third, and fourth defenses are alike in all the answers.    The Buckeye Company only adds a fifth, depending upon an additional clause in its policy.

The first defense states the provision which each policy contains, " that if the insured or his assigns should thereafter make any other insurance upon said property, without the consent of the company indorsed on the policy, or otherwise acknowledged by them in writing, the policy should cease and be of no further effect; that upon the face of the policy in each case there was permission for $7,500 more insurance, which had been procured by the plaintiff, making the total of $10,000; and that these policies had been kept alive by renewals till the fire; but that after procuring them, Fuller procured $10,000 more insurance on the same property in other companies without notice to defendants, which insurance he had collected of said

other companies since the fire, thus avoiding the policy on which this suit was brought.

To this defense, as well as to all the others, a demurrer was filed. But it was held by the court on the argument at the former hearing upon the demurrer, that the averments of this first defense brought the case within the prohibition of "other insurance," and the demurrer was accordingly overruled.

The second defense, after reciting the same provision against "other insurance," avers that Fuller had sold the property since the issuing of the policy to Mark Munday and two others for $75,000, retaining a lien for $50,000 of unpaid purchase money, and providing that the said purchasers should procure insurance in $10,000, loss, if any, payable to Fuller, which was done, without notice to the defendants, in violation of the provision against other insurance.

It is also averred that Munday, soon after the purchase from Fuller by the three, purchased out the other two purchasers, and at the time of the fire owned the whole, subject to the lien aforesaid in favor of Fuller.

The demurrer to this second defense was sustained at the former hearing, on the ground that the insurance procured by Munday on his interest was not "other insurance" made or procured by Fuller within the meaning of the provision in the policy, although the loss was payable to Fuller; that the insurance was on a different interest from that of Fuller; and that in order to bring the case within the prohibition, the additional insurance must be on the same, or part of the same interest of the same party.

As the third defense, it is averred that there is a condition against prior as well as future "other insurance," and that the plaintiff, when his policy was renewed, failed to advise the defendant of the existence of the insurance procured by Mark Munday, or of the transfer of the property to him, and that the condition in the policy required the representation of such changes upon renewals, on penalty of making

void the policy; and that the defendants would not have renewed the policy if they had known the facts.

As a fourth defense, it is averred that Fuller represented that he was the owner of the property, and that when the policy was renewed, he did not advise the defendants that the ownership had been changed by sale to Mark Munday, and that as by the provision of the policy every renewal is deemed to be made upon the original representations unless they are expressly changed, this was a misrepresentation and made void the policy.

In the answer of the Buckeye Insurance Company, it is alleged, as a fifth defense, that the policy in that case contains a provision that " in case of any transfer or change of interest of the insured, either by sale or otherwise, without consent of defendants, the policy shall thenceforth be void and of no effect;" that the policy also contains a provision that all renewals shall be considered as made under the original representations, unless varied by new representations in writing; that at the making of the original policy, in June, 1864, the property was represented as owned, and was owned, by Fuller, and was insured as his; that on the 19th September, 1864, Fuller sold and conveyed to Munday, Calvert & Carey; that on the 4th April, 1865, Calvert and Carey sold and conveyed to Munday, who owned the property at the time of the fire, of which the defendants had no notice. The policies issued by the other three companies have no such clause as that on which this fifth defense is founded, and their answers do not contain this fifth defense.

The case was elaborately argued upon the demurrer to these defenses. But that argument was confined chiefly to the second defense. The demurrer to this defense, as has been remarked, was sustained. The demurrer as to the other defenses was overruled, and issues have been made. The evidence has now been heard, and the whole case has been argued upon the evidence and the law.

The policies have been put in evidence, and contain the

clauses which the answers represent them to contain. The history of the making of the contracts of insurance has been proved by the testimony of Mr. Fuller and of Mr. Hurlburt. It appears that there was no formal written application and representation for insurance, and I am of the opinion, from the weight of the evidence, that the policies were retained here in Cincinnati, and were not forwarded to Fuller, at Louisville, so that he did not see, personally, how the policies were drawn or how the property was described. Mr. Hurlburt, the president and agent of the Buckeye Company, made the contingent arrangement with Fuller, at Louisville, in a sort of casual and informal way, and Fuller wrote to Bates, to inquire into the sufficiency of the company, and Bates being satisfied, the policies were issued without any more formal or specific representations, the parties having confidence in each other's good faith; and when the policies needed renewal, Bates paid the premium and drew on Fuller to reimburse himself. In the meantime, as is alleged on behalf of the defendants, Fuller sold the premises to Munday and others, retaining a lien thereon for $50,000 of the purchase money, and requiring an insurance to be kept by the purchasers, of $10,000; loss, if any, payable to Fuller for his security—and these transactions were not made the subject of representations to the companies.

I find no evidence that the risk was in any measure increased by this change. There is nothing in the character of the purchasers or of Munday, to make the moral risk or any risk greater than it would have been if the property had not been sold. Fuller remained interested in the property so largely beyond all the insurance, that there could not be supposed to be any appreciable increase of risk on the ground of his want of interest.

Nor can I find that the failure of Fuller to represent the fact of his sale to Munday, and the further fact that Munday procured the insurance in his own name, under the circumstances stated, was a misrepresentation or a concealment of a fact material to risk. Nor do I find any such want of

representation of Bates' relation to this property, and to Fuller, as to impair the validity of these policies.

We come, then, again to consider the defense of "other insurance."

The interest of Bates, in the present case, was that of a mortgagee, and Fuller's interest was that of mortgagor, so far as the original policies, of which these policies are renewals, were concerned; and as between Fuller and Munday, Fuller was the mortgagee and Munday the mortgagor. The form of conveyance used was that common in Kentucky and some other States, where, instead of a separate deed, and a separate mortgage deed back to secure the purchase money, the deed itself which conveys the title retains a lien to secure the purchase money. But the relation of the parties to the transaction are not different from that between the vendor of real estate, who takes back a separate mortgage to secure the purchase money under the forms of conveyance usual in Ohio.

The interests of Fuller and of Munday were distinct, as were the interests of Bates and Fuller; and when Fuller procured the policies of insurance, and assigned, or made the loss, if any, payable Bates, to secure his indebtedness to Bates, it was the interest of Fuller and not of Bates which was insured; and, although Bates was authorized to collect the loss and apply it to the payment of the lien, Fuller was the party bound to keep the conditions of the policy. The insurance was his. Though Bates was entitled to collect the money, it was to pay Fuller's debt. 31 Pa. St. 438; 17 N. Y. 39.

The interest insured was entirely distinct from that of Bates as mortgagee, whose only interest was his claim. This he might have had insured, and in case of loss the company, on paying the loss, would have been subrogated to his right as mortgagee, to the extent of the loss paid. But when a loss happens under a policy on the mortgagor's interest, like this, there is no subrogation to rights against others.

It is the property itself which is insured, and not a mere debt secured by a lien upon it.

The distinct nature of the interests of mortgagee and mortgagor is well explained by Judge Story in the case of *Carpenter* v. *Providence and Washington Insurance Co.*, 16 Pet. 501. The case of *Woodbury Savings Bank* v. *Charter Oak Insurance Co.*, 31 Conn. 518, decided that where the mortgagee had procured a policy on his interest, the condition against further insurance was not violated by a policy procured by the mortgagor on his interest. That was sustained by the authorities undoubtedly, and by principle.

The word "assigns," as used in this clause of the policy, "if the said insured or assigns shall hereafter make any other insurance upon said property," means not assignees or transferees of the property but of the policy. This construction is reasonable, and has been settled by authority. *Holbrook* v. *American Insurance Co.*, 1 Cur. 193; *Wilson* v. *Hill*, 3 Met. (Mass.) 66–68.

The question of "other insurance" is not in this case affected by the word "assigns," as there are no assigns of these policies who have obtained other insurance. The question, whether there has been "other insurance" in this case, obtained by or for Fuller, in violation of the policy, I have again examined as well as the pressure of the business of the term would permit. The precise facts of this case are not to be found in any of the adjudicated cases, and present the question of "other insurance" under novel circumstances, and in a way, perhaps, to leave it not quite clear of doubt. But, having regard to the principle upon which courts uniformly construe these conditions in a policy, favorably to the insured, to avoid a harsh and inequitable forfeiture, I conclude that the policies obtained by Mark Munday, on his interest in the property, loss, if any, payable to Fuller, to secure the payment of purchase money, were not "other insurance," "made by Fuller or assigns," "upon said property," and, therefore, did not fall within the prohibition of this clause in the pol-

icy. I think this conclusion is sustained by principle, and is not inconsistent with the precedents.

The case most relied upon by counsel for the defendant, and which most nearly supports his position, is that of *Holbrook* v. *American Insurance Co.*, 1 Cur. 193. There are, however, differences between that case and the present, which will not permit us to follow it as authority here. One difference, which is of itself sufficient to distinguish it, is that in that case the insured, who had sold the insured property himself, paid the premium for the "other insurance" on the property sold. Such was the hypothetical case put by the judge in his charge to the jury. Here the premium is paid by Munday, and the insurance was procured by him on his own interest and for his own benefit, although the loss, if any, was to be applied on his debt to Fuller. Judge Curtis gave it, in charge to the jury, "that if the insurance obtained by the purchasers (Shepherd, Wright & Ripley) nominally covered the whole property, and not merely their interest in it, and they were in any manner authorized by the plaintiffs" (the insured) "so to insure, if there was any agreement between the plaintiffs and Shepherd, Wright & Ripley that the former" (the plaintiffs) "would pay the cost of insuring the special interest of Shepherd, Wright & Ripley, or any part of it, then there was subsequent insurance within the meaning of the policy, and the plaintiffs could not recover."

The language of the judge, in his charge, seems to be a little more guarded than some of the remarks preceding it, which came nearer than any decision I have seen to confounding the interests of the mortgagor and mortgagee. Nevertheless, the better opinion is, that for purposes of insurance they are entirely distinct, and never to be confounded. Involving, as this question does, a forfeiture of all rights under the policy, without increase of risk, the court is bound to give a liberal construction of this clause in favor of the insured. It is in accordance with the current of judicial authority.

It remains to consider the fifth defense in the case against the Buckeye Company, that the policy is forfeited by "a transfer or change of interest of the insured, either by sale or otherwise, without consent."

This question was not argued on the former hearing upon the demurrer. The evidence shows that Fuller sold and conveyed the property for $75,000, retaining, however, his lien for $50,000 of the purchase money. If this did not involve a forfeiture, it is probable that this might be regarded as a change in the interest of the insured, although there can be no doubt that he retained a very large insurable interest. He is to be regarded as having retained the entire property, so far as the security of the purchase money was concerned. Regarding the real objects of the parties, and their relation to each other, we can not find such a change of interest here, by sale or otherwise, as to avoid this policy.

Courts have held that where the property insured was sold and conveyed by a deed absolute in form, and at the same time has made a mortgage back to secure the purchase money, the two deeds are to be regarded as one, and the vendor is to be regarded as holding his title unchanged, so far as his insurance was concerned. There are many cases which may be regarded as authorities to this point.

In *Hitchcock* v. *Northwestern Insurance Co.*, 26 N. Y. 68, the words were, "in case of any transfer, or termination of any such interest of the assured, either by sale or otherwise, without consent." It was held that a sale and conveyance, and a mortgage back to secure the purchase money, was not such transfer and termination of the interest as to affect the policy.

In *Ætna Insurance Co.* v. *Jackson & Co.*, 16 B. Mon. 255, the language was as stated by the chief justice, Marshall, p. 255, "that in case of any transfer, or change of title in the property insured by this company, such insurance shall be void."

The property consisted of chattels, but it was sold and the

ownership was changed, though the insured retained the possession with a lien for the price. Held, that the property was not "*changed*," within the meaning of the policy. But a clearer case is that of *Kitts* v. *Massasoit Co.*, 56 Barb. 177. The words were, "and in case of any change of title in the property insured this policy shall cease and determine"—p. 178. The court held that there was no difference between these words and the words "transfer or termination," used in 26 N. Y. 68, and in several other cases. The court say, on p. 184, "Now, if the sale and taking back a mortgage for the purchase money did not 'transfer' the title, how can it be said that such an act 'changed' the title? Can there be a change of title, within the meaning of the policy, by an act which does not 'transfer' the title—a change without a transfer?"

The language in the present case, I am satisfied, must bear the same construction; and that the sale by Fuller, retaining the title by way of a lien for $50,000 of the purchase money, was not a forfeiture of the policy.

I have placed my opinion upon the construction of the language of the policy. But the informal manner in which the application was taken by the agent of the defendants, and without written representation, together with the other circumstances in evidence, as to the origin and continuance of the insurance, might well be considered on the further question, whether in the present case there has not been a waiver on the part of the defendants of strict representation and of notice of any supposed change of interest or of other insurance without increase in risk.

If the case is taken up on error, the bill of exceptions ought to include all the parol testimony bearing on this last feature of the case, as well as the documentary evidence, so that each party may have the benefit of the case as it has been proved at the trial, however the opinions of different courts may chance to differ.

I find, then, for the plaintiff in each case, for the full amount of the policy and interest.