DIME SAV. BANK OF BROOKLYN v. PETTIT et al.

(Supreme Court, Special Term, New York County. August, 1899.)

MORTGAGE—FORECLOSURE SALE—COMPENSATION OF REFEREE.
    Under Code, § 3297, providing that, where property on mortgage fore-
    closure sells for $10,000 or upwards, "the referee may receive such addi-
    tional compensation as to the court may seem proper," the referee is not
    entitled to such compensation for every sale amounting to $10,000 or over,
    but only for those wherein the fixed compensation seems to the court inad-
    equate because of the unusual amount of labor required.

Action by the Dime Savings Bank of Brooklyn against John Pettit
and others. Motion by referee for extra compensation. Denied.

E. Blumenstiel, for the motion.
Ritch, Woodford, Bovee & Wallace, opposed.

McADAM, J. The referee is not entitled, under section 3297 of
the Code, to additional compensation on a sale of real estate on fore-
closure unless he has actually received and is accountable for $10,000
or more in cash. Hosmer v. Gans, 14 Misc. Rep. 229, 35 N. Y. Supp.
471; Insurance Co. v. Bendheim (May 20, 1898) 59 N. Y. Supp. 793.
In this case the property was sold for $110,000, and bought in by
the plaintiff, leaving a deficiency of about $13,000. The plaintiff
waived the payment of the 10 per cent., so that the referee has re-
ceived nothing. Clearly, extra compensation cannot be demanded
here. The statute fixes the referee's fees at a sum not to exceed $50
in cases where the property is sold for less than $10,000. Code, § 3297.
The provision that, where the property sells for $10,000 or upwards,
"the referee may receive such additional compensation as to the court
may seem proper," not to exceed $500, applies only to cases which
are exceptional and unusual, in which the referee has had more than
the ordinary amount of labor, and was never intended to apply to
every case where the sum realized is more than $10,000. Such a con-
struction would be absurd. There would be no need of leaving the
matter to the discretion of the court, because there would be nothing
but the amount realized to base a discretion upon. The rule is not
an arbitrary, but an equitable, one, intended to meet cases in which
it is evident to the court that $50 is inadequate. From the number
of applicants for such references, it is very safe to assume that the ma-
jority are satisfied with $50.

Motion denied, without costs.

(28 Misc. Rep. 9.)

THIRD NAT. BANK OF BUFFALO v. SPRING.

(Supreme Court, Trial Term, Erie County. June, 1899.)

1. CONDITIONAL SALE NOTE—INTEREST.
    Where a note, given under a contract for the conditional sale of a piano,
    contains an absolute agreement to pay interest, and the closing part of the
    agreement provides that the note is to draw interest from date if not paid
    at maturity, interest will be allowed from the date of the contract.

2. SAME—NEGOTIABILITY.
    The negotiable instruments law (Laws 1897, c. 612, § 23), which provides
    that within such law an instrument "is payable at a determinable future

· time which is expressed to be payable on or before a fixed or determinable future time specified therein," and that "an unqualified order or promise to pay is unconditional, within the meaning of this act, though coupled with a statement of the transaction which gives rise to the instrument," is not applicable to a conditional sale note by the terms of which ownership of the thing sold remains in the seller, and the buyer is given the right to acquire it by performing certain conditions precedent; and such instrument is not a negotiable note.

3. SAME — PAYMENTS MADE IN GOOD FAITH AND WITHOUT NOTICE OF ASSIGN-MENT.

Where the maker of a conditional sale note, which provides that no person shall have the right to receive payments upon it unless it is presented, and the payments indorsed at the time they are made, makes payments in good faith and without notice that the note had been assigned, such payments are binding on the assignee.

Action by the Third National Bank of Buffalo against Hattie Bowman Spring on a note. The case was submitted to the court on the evidence, and decision rendered.

L. L. Lewis, Jr., for plaintiff.

Geo. F. Thompson, for defendant.

WHITE, J. On or about May 29, 1896, a co-partnership firm, known as Luxton & Black, was engaged in the business of buying and selling, or, at any rate, in selling, pianos in Buffalo. The defendant took from them a piano under an agreement by which he paid them $50 in cash, and executed and delivered to them an instrument in writing in the words and figures following, viz.:

"250.00                                    Buffalo, N. Y., 5/29/1896.

"On or before one year after date I promise to pay to the order of Luxton & Black two hundred and fifty dollars, payable at 418 Main St., value received, with interest. The makers and endorsers severally waive presentment for payment, protest, and notice of protest and nonpayment of this note. The piano described herein for which this note is given shall remain the property of Luxton & Black until their note is fully paid, and in no event shall the title of said piano rest in the said H. Bowman or her assigns until the entire amount for which this note is given, together with the interest thereon, is fully paid. No person is authorized to receive a payment or make collections on this note unless the note is presented and the amount paid duly endorsed at the time. Nor is any agent allowed to extend the time of payment or renew said note. This note is to draw          per cent. interest from date if not paid at maturity.

"No. 26,082.                                    Hattie Bowman.
"Style, H. Oak.                    Address: Middleport, N. Y."

Subsequently, and prior to August 6, 1896, Luxton & Black assigned and transferred said instrument to the plaintiff as collateral security for an indebtedness, which has not been paid. On August 6, 1896, and also on September 6, 1896, the defendant paid to Luxton & Black, to apply upon said contract, $50, believing at the time she made these payments that Luxton & Black still owned and held the contract, and were entitled to receive them. On February 11, 1897, the plaintiff notified the defendant that it then owned the contract, and informed her that the $250 agreed by it to be paid would become due May 29, 1897, or sooner, and requesting her to bring her receipts for any payments theretofore made by her. There is no direct evidence that the plaintiff knew or was informed when it took this assignment that the payments of August 6 and September 6, 1896, had been made.

On May 29, 1897, the defendant paid to the plaintiff $150, claiming that it was all that was due from her. The contract contains two inconsistent provisions concerning the payment of interest. The first so-called promissory note part of this contract contains an absolute agreement to pay interest, while the closing part of the agreement provides that interest shall be paid by her if the $250 is not paid on or before one year from the date thereof. The defendant, upon the trial, testified that no interest at all was to be paid. The inconsistent provisions of the contract itself, and the testimony of the defendant upon this subject, might justify a refusal to allow interest prior to May 29, 1897, but I have concluded to allow interest from the date of the contract, and for that amount the plaintiff is entitled to judgment. See Coleman v. Beach, 97 N. Y. 545; Woolsey v. Funke, 121 N. Y. 87, 24 N. E. 191; Clark v. Woodruff, 83 N. Y. 518. The parties called the transaction indifferently a "note" and a "lease," but it was essentially and in fact a conditional sale of the piano, nothing more or less, and the so-called promissory note part of the agreement was the covenant on the part of the defendant to pay the purchase price. Kitts v. Insurance Co., 56 Barb. 177. The legal effect of the transaction was simply an agreement for the purchase and sale of the piano. The title of the piano remained in Luxton & Black. By the assignment of the contract to the plaintiff, it succeeded to the right of Luxton & Black, namely, the ownership of the piano and the contract on the part of the defendant to pay for it. Such an instrument cannot be properly called a negotiable promissory note. It is much more than that in fact. It is evidence of title to personal property, conclusive as between the parties. Unless the payments made by the defendant in August and September, 1896, were valid as against the plaintiff, and, under the ruling now made, until the interest is actually paid by the defendant, the plaintiff is and will remain the owner of the piano. Trust Co. v. Storm, 81 Hun, 33, 30 N. Y. Supp. 605. Such contractual provisions are inconsistent with and repugnant to the terms of a negotiable promissory note as defined by the law merchant. The line of decisions of which Mattison v. Marks, 31 Mich. 421, Ernst v. Steckman, 74 Pa. St. 13, and School Dist. v. Hall, 113 U. S. 135, 5 Sup. Ct. 371, are typical, do not, in my judgment, conflict with the view here expressed. There seems to be a clear distinction on principle between those cases and the one at bar.

The negotiable instruments law, which was passed in May, 1897, wherein it provides that within that law an instrument "is payable at a determinable future time which is expressed to be payable on or before a fixed or determinable future time specified therein" (Laws 1897, c. 612, § 23), and that "an unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with a statement of the transaction which gives rise to the instrument" (Id. § 22), has no application here. It may be conceded that, if the so-called promissory note part of the contract in question were cut out of or detached from the balance of the contract in question, it would, in form, be a good and valid negotiable promissory note within the law merchant. It is the balance of the instrument that makes it other-

wise, showing, as it does, that the entire instrument, as contradistinguished from such a negotiable promissory note, is in fact a conditional contract for the purchase and sale of a piano, fixing the ownership in one of the parties, and giving the other the right to acquire it by performing certain conditions precedent. The instrument provides, among other things, that no person shall have the right to receive payments upon it unless it is presented and the payments are indorsed at the time they are made. This was intended, no doubt, for the protection of the vendors against unauthorized acts of agents, and in no event can the plaintiff here claim an advantage from a nonobservance of that provision by Luxton & Black, because the only rights it has are those derived from them. This is true, unless the defendant was bound to know, when she paid the $100 to Luxton & Black, that they had already assigned the contract to the plaintiff. The contract being a mere chose in action, and in no sense a negotiable promissory note, and those payments having been made by the defendant in good faith in the belief that Luxton & Black had the right to the money, and without notice that they had assigned to the plaintiff, were valid payments by her upon the contract, and the plaintiff is bound by them. Van Keuren v. Corkins, 66 N. Y. 77; Trustees v. Wheeler, 61 N. Y. 88. Special legislation imposing restrictions and conditions upon the right to make, use, and take negotiable promissory notes in certain commercial and trade transactions,—placing upon such paper danger marks, so to speak, as a warning and protection to the unwary against fraud,—and the wisdom of maintaining the law merchant in its integrity, all indicate the necessity for such constructions of that law by the courts as will, so far as possible, prevent confusing innovations, and keep the law, what it has been for ages, the basis of an inestimable circulating credit, like the currency of the country. No controlling authority against the views here expressed has been called to my attention by counsel, although able and instructive briefs from both sides are before me. I am of the opinion that the contract between the defendant and Luxton & Black is not a negotiable promissory note within the law merchant; that the payments made by the defendant in August and September, 1896, were good and valid, and are binding upon the plaintiff; that the plaintiff is entitled to judgment for the amount of the interest upon the $250, to be computed according to the rule applicable to partial payments in such cases.

Ordered accordingly.