# FLEMING v. SHERWOOD.

(43 L.R.A.(N.S.) 945, 139 N. W. 101.)

**Bills and notes — negotiability.**

1. Under § 6303 of the Code of 1905, a note is not negotiable which contains the following provision: "Payee's ownership of the goods account of which this note is given, the account thereof, and the contract conditions of original sale, are not affected by accepting this note until receipt of full amount due thereon." Such note does not "contain an unconditional promise or order to pay a sum certain in money," but bears upon its face the suggestion of a conditional sale.

**Ratification of agent's act — effect.**

2. One who ratifies the unauthorized act of an agent by accepting the benefits of the transaction will be held to incur the obligations as well as the benefits of the transaction.

Opinion filed December 11, 1912.

Appeal by plaintiff from a judgment of the District Court for Cass County, *Pollock,* J., in defendant's favor in an action on a promissory note.

Affirmed.

Statement by BRUCE, J. Early in May, 1908, one H. Q. Turner, a collecting agent for Fetzer & Company, telephoned from Fargo to defendant, a farmer at Verona, that in settling up the Fetzer & Company business in North Dakota he had two drills which he proposed to sell the defendant for $50. It was agreed that the drills should be delivered to the defendant at Verona, North Dakota, in the June, following. A note dated May 12, 1908, was sent by Turner to the defendant, and was signed by the defendant and returned by mail.

Note.—The authorities on the question of the reservation of title of property as affecting negotiability of note for purchase price are gathered in a note in 43 L.R.A. 277, and in a supplemental note appended to the report of the above case in 43 L.R.A.(N.S.) 945, where it is shown that, as appears in the earlier note, the negotiability of a note is not destroyed merely because, in addition to the promise to pay, it contains a statement that the title to the property for which the note is given is not to pass until the note is paid.

The note was as follows: "October 1st after date I promise to pay to Fetzer & Company, or order, fifty and no/100 dollars with interest at 7 per cent per annum from maturity until paid, with all attorneys' fees for collection of this note unless not collectable by law. Value received, waiving all right of valuation or appraisement law, homestead or other exemption, as to this debt. Payee's ownership of goods of which this note is given, the account thereof, and contract condition of original sale, are not affected by accepting this note until receipt of full amount due thereon." This note was on June 9th, 1908, sold to the plaintiff, who testifies that at such time he had no knowledge of any defenses thereto, and this fact is not disputed, although there is some somewhat inconclusive evidence which might tend to show that at the maturity of the note Fetzer & Company made a demand for its payment. The evidence showed that Fetzer & Company did not ship the drills to defendant at any time, nor did the defendant ever receive such property. It does not show, however, that he ever made any demand for such drills until asked to pay the note. At the close of the evid. :ce the plaintiff moved for a directed verdict, which motion was denied. The jury thereupon rendered a verdict in favor of the defendant, and plaintiff moved for judgment notwithstanding the verdict, and in the alternative for a new trial. This motion was also denied, and on the 14th day of June, 1911, judgment was rendered in favor of the defendant, and against the plaintiff. Plaintiff appeals from the order denying his motion and from the judgment.

*A. C. Lacy,* for appellant.

A clause retaining title in the vendor does not destroy negotiability, First Nat. Bank v. Slaughter, 98 Ala. 602, 39 Am. St. Rep. 88, 14 So. 545; Heard v. Dubuque County Bank, 8 Neb. 10, 30 Am. Rep. 811; W. W. Kimball v. Mellon, 80 Wis. 133, 48 N. W. 1100; Chicago R. Equipment Co. v. Merchant's Nat. Bank, 25 Fed. 809; Burnley v. Tufts, 66 Miss. 48, 14 Am. St. Rep. 540, 5 So. 627; Bank of Carroll v. Taylor, 67 Iowa, 572, 25 N. W. 810; Chicago R. Equipment Co. v. Merchants' Nat. Bank, 136 U. S. 268, 34 L. ed. 349, 10 Sup. Ct. Rep. 999; Mott v. Havana Nat. Bank, 22 Hun, 354; Third Nat. Bank v. Bowman-Spring, 50 App. Div. 66, 63 N. Y. Supp. 410; Arnold

24 N. D.—10.

v. Rock River Valley Union R. Co. 5 Duer, 207; Hodges v. Schuler, 22 N. Y. 114; Frank v. Wessels, 64 N. Y. 155.

*Turner & Murphy,* for respondent.

A contract for the payment of a sum certain on a day certain, which has coupled with such promise a stipulation reserving the title of property in the payee, not a contract which can become a negotiable instrument. Poirier Mfg. Co. v. Kitts, 18 N. D. 556, 120 N. W. 558; Pfeiffer v. Norman, 22 N. D. 168, 38 L.R.A.(N.S.) 891, 133 N. W. 99; Sloan v. McCarty, 134 Mass. 245; Killam v. Schoeps, 26 Kan. 310, 40 Am. Rep. 313; Wright v. Traver, 73 Mich. 493, 3 L.R.A. 50, 41 N. W. 517; First Nat. Bank v. Alton, 60 Conn. 402, 22 Atl. 1010; South Bend Iron Works v. Paddock, 37 Kan. 510, 15 Pac. 574; Deering v. Thom, 29 Minn. 120, 12 N. W. 350; Post v. Kinzua Hemlock R. Co. 171 Pa. 615, 33 Atl. 362; Third Nat. Bank v. Armstrong, 25 Minn. 530; 7 Cyc. 581.

BRUCE, J. (after stating the facts as above). Many errors are assigned by the plaintiff and appellant. The principal error, however, is that alleged to have been committed by the trial court in holding that the note in controversy was not negotiable. If this question is determined adversely to the plaintiff and appellant, it practically disposes of the remainder of the assignments, and the judgment of the lower court should be sustained.

We are of the opinion that the note was not negotiable. The question before us is an exceedingly difficult one to determine, as are usually all questions which involve a construction of the statutes. In considering the same we must bear in mind that we are construing the provisions of the so-called uniform negotiable instruments act, and not of the former statutes of this state, nor of the law merchant. We must, however, consider, to a greater or less degree, these former statutes and the law merchant, as their provisions and interpretation are all that we have to go by in construing many of the doubtful provisions of the codified, uniform law. We, in fact, have been able to find no cases since the adoption of the uniform act in this state which have directly passed upon the question before us. Counsel for the respondent, it is true, cites the case of Gazlay v. Riegel, 16 Pa. Super. Ct. 501, but that case, though handed down after the adoption of the uni-

form act in Pennsylvania, considered and construed a note which was executed prior to the passage of the statute.

The specific question which we are called upon to decide is whether the special clause in the instrument before us, to the effect that "payee's ownership of goods account of which this note is given, the account thereof, and contract condition of original sale, are not affected by accepting this note until the receipt of the full amount due thereon," has the effect of neutralizing the otherwise positive agreement to pay, and of destroying the negotiability of the instrument. The uniform negotiable instruments act (Rev. Codes 1905, §§ 6303 et seq.) provides, among other things, that "an instrument, to be negotiable, . . . (2) must contain an unconditional promise or order to pay a certain sum in money;" and "(3) must be payable on demand or at a fixed or determinable future time." This former provision, however, is qualified by § 6305, which provides, among other things, that "an unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with . . . a statement of the transaction which gives rise to the instrument." The question, then, before us, resolves itself into the question whether the promise to pay is unconditional.

There is a conflict in the authorities under the law merchant and under the statutes which were based upon it, as to the effect of a reservation of title in the vendor of goods which is noted on the face of the instrument. Some of the cases make the distinction turn upon the fact of possession. Some hold that where the right of possession is in the vendee, and the seller has merely a naked title subject to the interest of the buyer, while the buyer has the right of possession and the contingent right to a title which would vest absolutely on the payment of the agreed price without further act on the part of the seller, the transaction is a security transaction, and not a conditional sale, and that the note is none the less negotiable. They hold, however, that where the possession is retained by the seller until the full payment of the purchase price, as well as the title, the note is not negotiable, since the agreement to pay is conditioned upon the fact of delivery, which is within the control of the vendor, and who, on the failure to pay at maturity, might cancel the agreement and retain the property. They in short hold that in such cases there is no positive agreement to pay,

but rather that the transfer of title and possession and payment shall be simultaneous acts. Some reach this conclusion even where the possession is in the vendee, holding that the transfer of title is contingent upon the payment, and the promise to pay is therefore conditional. Others hold that the reservation of title in an instrument incorporates into the same a dual contract, and for this reason renders it non-negotiable. Others still hold that the reservation of title, even though coupled with possession, or the right to retake possession even after delivery if the vendor feels himself insecure, and this whether before or after the time when the payment has become due, does not have the effect of rendering the instrument non-negotiable, provided that the promise to pay is in itself unconditional. There can be no doubt, however, that the weight of authority under the law merchant and the former statutes is against the negotiability of a note which upon its face retains title in the vendor, and this whether the possession is retained by the vendor or not. 7 Cyc. 581; Sloan v. McCarty, 134 Mass. 245; First Nat. Bank v. Alton, 60 Conn. 402, 1010; South Bend Iron Works v. Paddock, 37 Kan. 510, 15 Pac. 574; Killam v. Schoeps, 26 Kan. 310, 40 Am. Rep. 313; Wright v. Traver, 73 Mich. 493, 3 L.R.A. 50, 41 N. W. 517; Bannister v. Rouse, 44 Mich. 428, 6 N. W. 870; Edwards v. Ramsey, 30 Minn. 91, 14 N. W. 272; Deering v. Thom, 29 Minn. 120, 12 N. W. 350; Stevens v. Johnson, 28 Minn. 172, 9 N. W. 677; Third Nat. Bank v. Spring, 28 Misc. 9, 59 N. Y. Supp. 794; W. W. Kimball & Co. v. Mellon, 80 Wis. 133, 48 N. W. 1100; Post v. Kinzua Hemlock R. Co. 171 Pa. 615, 33 Atl. 362. And in our research we have only been able to find one case, that of Siegel, C. & Co. v. Chicago Trust & Sav. Bank, 131 Ill. 569, 7 L.R.A. 537, 19 Am. St. Rep. 51, 23 N. E. 417, in which a note was held negotiable where the temporary possession, at any rate, was not in the vendee. Such at any rate is true of the following cases: First Nat. Bank v. Slaughter, 98 Ala. 602, 39 Am. St. Rep. 88, 14 So. 545; Howard v. Simpkins, 69 Ga. 773, and same case in 70 Ga. 322; Burnley v. Tufts, 66 Miss. 48, 14 Am. St. Rep. 540, 5 So. 627; Heard v. Dubuque County Bank, 8 Neb. 10, 30 Am. Rep. 811; Third Nat. Bank v. Bowman-Springs, 50 App. Div. 66, 63 N. Y. Supp. 410; Chicago R. Equipment Co. v. Merchants' Nat. Bank, 136 U. S. 268, 34 L. ed.

349, 10 Sup. Ct. Rep. 999, affirming 25 Fed. 809; Choate v. Stevens, 116 Mich. 28, 43 L.R.A. 277, 74 N. W. 289.

"The contract declared on," says Mr. Justice Field in the case of Sloan v. McCarty, 134 Mass. 245, "contains a promise to pay to the plaintiff or order a certain sum of money in one month from date for a horse received of the plaintiff. If this were all, it would be a promissory note, as the recital of the consideration does not affect the character of the contract; but the contract also contains an agreement that the horse should remain the property of the plaintiff until paid for in full by the defendant. This is not an agreement relating to the manner in which the promise to pay money may be enforced, but is a substantive agreement. The whole contract describes a conditional sale of a horse. If the money were not paid by the defendant at the time specified, the plaintiff could, if he chose, rescind the conditional sale, and the defendant then would have no right to the horse and would be no longer liable to pay the note. If the plaintiff should insist upon the performance of his promise by the defendant, the obligation of the defendant to pay the money is in legal effect conditional upon the title to the horse vesting in him when the money is paid in full, and this condition appears on the face of the contract. The contract contemplates that the payment of the money by the defendant, and the transfer of the title to the horse from the plaintiff, should be simultaneous acts, and if the horse should die, for example, within a month, without fault on the part of the defendant, the plaintiff would be disabled from transferring the title, and could not maintain an action on the contract.  .  .  .  The contract is something more than a promise to pay money, and the promise to pay money is not a promise to pay it absolutely and at all events, and therefore the contract is not a promissory note within the meaning of the General Statutes." This was a case in which the title alone was reserved by the vendor.

A much stronger case, of course, for non-negotiability, is presented where both the title and the right of possession are reserved in the vendor, and this seems to be the case with the note before us. It is to be noted that the reservation in the instrument is a reservation to the vendor of the *ownership* of the goods, and not merely the title. Section 4702, Rev. Codes 1905, in defining the term, provides that "the *ownership* of a thing is the right of one or more persons to *possess and use*

*it to the exclusion of others.* In this Code the thing of which there may be ownership is called property." We thus find a note before us which reserves in the vendor the right to use and possess. The term, in fact, is broader than either the term *title* or *possession,* and includes both. "The owner of property is said to be one 'who has dominion of a thing, real or personal, corporeal or incorporeal, which he has a right to enjoy and to do with as he pleases, either to spoil or destroy it as far as the law permits, unless he be prevented by some agreement or covenant which restrains his right.' " Garver v. Hawkeye Ins. Co. 69 Iowa, 202, 28 N. W. 455. "Ownership is the right by which a thing belongs to an individual to the exclusion of all other persons. Converse v. Kellogg, 7 Barb. 590. The term *title,* indeed, has been defined to be "that which constitutes a just cause of exclusive possession, or which is the foundation of ownership of property." Webster's Dict.; Houston v. Farris, 71 Ala. 570, 571; Pratt v. Fountain, 73 Ga. 261, 262. We thus have in the case at bar a promissory note which reserves to the vendor the right to the possession of the goods, as well as the title, and which also is open to the charge of uncertainty in that it refers to the terms and conditions of a contract, the exact nature of which is undisclosed. Even under the most liberal rule, such a contract or note does not evidence an unconditional promise to pay, and though the evidence discloses that there was a parol agreement that delivery of the goods should be made, the written note negatives this agreement, and the facts disclose that no such delivery was ever made.

We realize that § 6305 of the negotiable instruments act provides that an unqualified order or promise to pay is unconditional within the meaning of the chapter though coupled with "a statement of the transaction which gives rise to the instrument." We have in this case, however, something more than the statement of the transaction. In fact there is no statement of the transaction at all. We have a *reference* to a transaction and to a contract which may be entirely inconsistent with an unconditional promise to pay, and an express agreement of reservation of ownership, which in itself makes the agreement to pay conditional. The contract disclosed is that of a conditional sale, and not of a security transaction. Whether even a security transaction was intended to be permitted by the statute is a matter which is of no little doubt. Those interested in the preparation of the original uni-

form act certainly were in doubt on the question. See Brannon, Neg. Inst. Law, p. 6. We may certainly rest assured that a reservation of ownership was never intended by the legislature. Not only are we led to this conclusion from an examination of the authorities, but from a perusal of the act itself. If such reservation was intended to be permitted, why did the act (§ 6307) specially provide that an authorized sale of *collaterals* should not affect the negotiability of the instrument, and say nothing of the reservation of title or ownership, or the right of possession of the principal article sold. Those who adopted the instrument could not have been blind to the state of the law upon the question,—to the fact that even upon the question of the reservation of title there was a conflict in the authorities, and that there were no authorities in favor of the assumption of negotiability where both the title and the entire right of possession were reserved. A few words might have settled the controversy in favor of the negotiability, but they were not spoken. Numerous other mooted questions were settled by the act, among them the effect of a provision for payment out of a specified fund, the authorization of a confession of judgment, etc., all of which were mooted under the law merchant and the former statutes. The silence of the legislature on the question involved in this case is to us almost, if not entirely, conclusive.

The other assignments of error are equally without merit. Objection is made to the allowance in evidence of a telephone message alleged to have been received from H. Q. Turner without proof of his agency, and without laying the foundation as to knowledge of his voice, etc. Also to a statement of the said Turner that he was an agent of Fetzer & Company. There would be some merit in these objections were it not for the fact that the defendant mailed the note to Turner in response to such telephone message; that the note was made payable to Fetzer & Company, and that Fetzer & Company afterwards sold the same to the plaintiff. There was, in fact, a complete ratification of the acts of Turner by Fetzer & Company, and there was no need of proving agency at all. One cannot accept the benefits of a transaction and repudiate its obligations, and though it is true a ratification may be avoided by showing that it was made without knowledge of the material facts, the burden of showing such knowledge or lack of knowledge

was upon Fetzer & Company, or its indorsee, and not upon the defendant.

The judgment of the District Court is affirmed.