[Civ. No. 2404.   Third Appellate District.—May 31, 1922.]

## THE PEOPLE'S BANK (a Corporation), Respondent, v. C. W. PORTER, Appellant.

[1] PROMISSORY NOTE—PURCHASE PRICE OF CHATTEL—RETENTION OF TITLE UNTIL PAYMENT — NEGOTIABILITY. — The negotiability of a

1.   Reservation of title of property as affecting negotiability of note for purchase price, notes, 14 Ann. Cas. 1129; 20 Ann. Cas. 1333; 43 L. R. A. 277; 43 L. R. A. (N. S.) 945.

promissory note, having all the characteristics of a negotiable instrument, is not destroyed in the hands of an indorsee in due course, who takes with knowledge that the note is given as part of the purchase price of a chattel, title to which is retained until the note is paid.

[2] ID.—Payment of Note—Transaction not a Mortgage.—The provision in a promissory note or in an accompanying contract that the title to the chattel for which the note is given shall remain in the payee or seller until the note is paid does not make the transaction a mortgage in the sense of the statute requiring foreclosure to secure the payment of the indebtedness.

APPEAL from a judgment of the Superior Court of Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ralph H. Lewis for Appellant.

White, Miller, Needham & Harber for Respondent.

BURNETT, J.—Plaintiff brought an action on March 3, 1921, as indorsee and assignee of two certain promissory notes, dated August 21, 1920, appellant being the maker and the Eckley-Reynolds Company, a copartnership, engaged in the tractor business, the payee thereof. Each note is for the sum of $393 and is in the same form except that one is made payable six months after date and the other twelve months after date. It will be sufficient to set out the former, as follows:

"$393.          Sacramento, Calif., August 21, 1920.

"Six months after date without grace I promise to pay to the order of Eckley-Reynolds Co. at 531 Jay Street, Sacramento, Calif., three hundred ninety-three dollars in gold coin of the United States of America, of the present standard value, with interest thereon in like gold coin at the rate of 8% per annum from date until paid, for value received, interest to be paid semi-annually and if not so paid the whole sum of both principal and interest to become immediately due and collectible, at the option of the holder of the note and in case suit or action is instituted to collect this note, or any portion thereof I promise and agree to pay in addition to the costs and disbursements provided by statute, such additional sum in like gold coin, as the court may

adjudge reasonable for attorney's fees to be allowed in said suit or action.''

It was not claimed that any part of either of said notes was paid nor was it denied that plaintiff was an indorsee for value in good faith before maturity, but it was urged in defense that there was a breach of warranty of a tractor for which the notes were given and that this defense could be maintained against plaintiff by reason of the fact that the notes were non-negotiable.

The trial court found: ''That at the time of the sale, delivery and indorsement of said promissory notes and each of them plaintiff had knowledge that said promissory notes were and each of them was, given as part of the purchase price of said tractor, and had notice and knowledge that at the time of the execution and delivery of said promissory notes and each of them a contract had been entered into by defendant and said copartnership in the words and figures set forth as Exhibit 'A' to plaintiff's answer to defendant's cross-complaint; that plaintiff at the time of indorsement and delivery to it by said copartnership of said promissory notes and each of them had no notice or knowledge of any defect, if any there were, in the personal property for the purchase price of which said notes were given and had no notice or knowledge of any total or partial failure of consideration for said promissory notes or either of them; that plaintiff at the time of said purchase, delivery and indorsement to it of said promissory notes and each of them . . . had no notice or knowledge of any warranty or guaranty that had been given at any time by said copartnership to defendant, nor did it have notice or knowledge of any facts that put it upon inquiry as to any failure of consideration for said promissory notes or either of them or as to any warranty or guaranty made by said copartnership to defendant.''

The sufficiency of the evidence to sustain the foregoing finding is not controverted, but its ordinary legal effect is deemed by appellant to be nullified by the consideration that the contract of sale of said tractor provided that the title to the machine should remain in the vendor until the whole consideration was paid by the vendee.

[1] The question to be determined, then, may be stated in the language of respondent: ''Is the negotiability of a

promissory note, having all the characteristics of a negotiable instrument, destroyed in the hands of an indorsee in due course, who takes with knowledge that the note is given as part of the purchase price of a chattel, title to which is retained until the note is paid?" The situation is the same as though there had been written into each of said notes the following clause: "This note is given as part of the purchase price of a Kordell Tractor this day delivered to the maker of this note, title to which tractor shall remain in the payee until this note, with all costs, expenses and attorney's fees for the collection thereof, has been fully paid when same shall become vested in the buyer."

As to the negotiability of such note a conflict of authority exists, although the weight and number of authorities decidedly preponderate in favor of respondent's contention as pointed out in its brief. From the citations therein we may quote from Daniels on Negotiable Instruments, sixth edition, section 52, and 3 R. C. L., page 917. From the former: "Where in a note the obligation to pay is not limited or contingent, but is absolute and unequivocal, the character of the note as a negotiable instrument is not affected by a recital therein that it was given for an amount due by the makers for goods furnished by the payee, upon a reservation of title as upon a conditional sale." The latter declares: "It seems to be a settled rule that the negotiability of a note is not destroyed merely because, in addition to the promise to pay, it contains a statement that the title to the property for which the note is given is not to pass until the note is paid."

Respondent claims—and we think with reason—that the framers of the uniform negotiable instrument law, which has been adopted in this state (Stats. 1917, p. 1531), had in view this conflict of authority and sought to render the negotiability of such notes unquestionable by providing (sec. 3084, Civ. Code) that "an unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with . . . 2. A statement of the transaction which gives rise to the instrument." Indeed, in Brannon's Negotiable Instrument Law, third edition, page 477, it is said: "The real purpose of this clause, as we learn from Mr. Crawford, who drafted the act, and from Judge Brewster, is to cover the case of a note which contains a statement

that it is given for a chattel, which is to be the property of the owner of the note until the note is paid. Such notes are usually regarded as negotiable. Several states, however, have taken the opposite view, holding that such notes are non-negotiable, and it was to bring the latter states into accord with the more general view and unify the law on this point that this clause was inserted.'' But whether such was the purpose is, of course, of little interest here, since we have no direct adjudication in this state upon the subject. Our courts are certainly at liberty without any embarrassment from the conflicting decisions of other jurisdictions to give a reasonable construction to said provision so as to effectuate the intention of the parties to be gathered from a consideration of the whole transaction. For, after all, such intention is the vital question and the only reason for considering at all the circumstance that the payee retained the title is that thereby the promise to pay may be rendered conditional. The notes, as we have seen, do not refer to said contract of sale, but contain an unconditional and absolute promise to pay at a certain time. But, considering together all the instruments as constituting one transaction, we do not discover an intention to make the payment dependent upon any contingency. Assuredly, there is no express language to the effect that the maker was to pay upon condition that the payee could and would transfer title at the time of the maturity of the notes. If such had been the intention of the parties it should have been, and we must assume it would have been, so written. If any such condition is to be imposed upon the payment of the notes, it must be the result of a reasonable implication of the said reservation. But such implication is strongly rebutted by the circumstance that one of the notes was to be paid six months before the absolute title was to pass. As to this note there can be no pretense that its payment was dependent upon any future contingency as to the title or otherwise. And as to both notes it should be said that the absolute promise made therein in simple, unequivocal language is not to be reduced or cut down to a conditional or contingent obligation by reason of a doubtful construction of an uncertain term in another part of the instrument.

But assuming that the actual consideration for the notes was the transfer of the title to the machine at the time of

their maturity, and not the *promise* to do so, it would not destroy their negotiability. A written promise to pay a certain sum of money at a day certain for a consideration thereafter to be rendered is a good promissory note. "The most that can be said of a recital in a note itself of the consideration on which it rests is that the indorsee, taking before maturity, is chargeable with notice of the recital. But a recital that it is given for some future thing to be done by the payee is not enough to advise an indorsee before maturity that there will be a failure of consideration." (*Siegel et al.* v. *Chicago Trust etc. Bank*, 131 Ill. 569 [19 Am. St. Rep. 51, 7 L. R. A. 537, 23 N. E. 417].)

So in *Splivallo* v. *Patten*, 38 Cal. 138 [99 Am. Dec. 358], it was held that a note given for the rental of property is negotiable, and that an indorsee of the note, though he takes it with knowledge of the consideration, is not subject to the defense that the original payee failed to give possession of the property for the rental of which the note was given. Appellant's position really amounts to an assault upon the consideration for the payment of the notes. It is virtually the claim that the obligation to pay the notes may not mature by reason of the failure or inability of the vendor to convey title. But there can be no doubt that such possible failure of the consideration cannot defeat the right of an indorsee in good faith and for value to recover.

Manifestly, the question must relate to the situation at the time the notes were given. What may happen later will not affect their negotiability. (*Pitman* v. *Walker*, 187 Cal. 667 [203 Pac. 739].) "An instrument negotiable in its origin continues to be negotiable until it has been restrictively indorsed or discharged by payment or otherwise." (Stats. 1917, p. 1539, sec. 3128.)

We think it clear that the parties intended no qualification of the promise to pay, but said provision that the title should be withheld was for the protection of the vendor to secure the payment of said notes.

[2] The only question, as we view the case, is whether this amounted to a mortgage in the sense of the statute requiring foreclosure to secure the payment of the indebtedness. (Sec. 726, Code Civ. Proc.)

The rule in this state is that where a note is secured by a mortgage, the note, although negotiable in form, is not nego-

tiable in law, where the purchaser takes it with knowledge of the existence of the mortgage. (*National Hardware Co. v. Sherwood*, 165 Cal. 1 [130 Pac. 881].)

But this undoubtedly refers to a mortgage executed in compliance with the requirements of the Civil Code. We have no such mortgage herein. It is true that in some of the decisions a similar situation is characterized as involving a mortgage, and it does possess, of course, the common feature of security. For instance, while in *Chicago Ry. Co. v. Merchants' Bank*, 136 U. S. 268 [34 L. Ed. 349, 10 Sup. Ct. Rep. 999, see, also, Rose's U. S. Notes], after stating that the negotiability of the note was not affected by the fact that the title to the cars for which it was given remained in the vendor until all the notes of the same series were fully paid, the supreme court of the United States declared that the agreement for the retention of the title constituted a short form of chattel mortgage, it is entirely plain that it was not technically a chattel mortgage within the contemplation of the law of this state. (Sec. 2956 et seq., Civ. Code.) Indeed, it is not claimed by appellant that a foreclosure would be required to enforce the obligation and no such issue was raised by the pleadings, appellant admitting that, "in the event the vendor at any time should desire to retake the possession of the tractor, such vendor could do so, and in the event he did take possession and allowed the installments to fall due under the contract, the delivery of the possession of the tractor and the payment of the balance due under the contract would be mutual and concurrent conditions and the vendor could not recover the balance due under the contract until the possession of the said tractor had been either tendered or delivered to the vendee," citing *Liver* v. *Mills*, 155 Cal. 462 [101 Pac. 299], and *Muncy* v. *Brain*, 158 Cal. 307 [110 Pac. 945].

It may be stated finally as to this branch of the case that the rule making a note secured by a mortgage non-negotiable is peculiar to this state and is based upon the theory that the note amounts to a promise to pay the balance of the indebtedness that may remain after the net proceeds of the sale under foreclosure have been applied to the payments thereof. The amount of such balance being, of course, uncertain at the time of the execution of the note, it cannot be said that the promise is to pay a certain and definite sum

of money. In such case an essential element of a negotiable instrument is therefore lacking. (*Meyer* v. *Weber*, 133 Cal. 681 [65 Pac. 1110].)

Respondent very aptly declares that the cases cited by appellant fall naturally into three classes and illustrate certain definite principles of law as follows: 1. Where the note upon its face is made subject to the terms of another instrument, such provision is an intentional warning given by the maker to any prospective indorsee that the promise to pay is conditional upon or subject to the performance of the collateral agreement referred to. Among the cases of this character cited by appellant, *Klots Throwing Co.* v. *Manufacturers' Commercial Co.*, 179 Fed. 813 [30 L. R. A. (N. S.) 40, 103 C. C. A. 305], and *Fleming* v. *Sherwood*, 24 N. D. 144 [43 L. R. A. (N. S.) 945, 139 N. W. 101], may be taken as examples.

In the former, the note specifically recited that it was "subject to terms of contract, between maker and payee of Oct. 25, 1905." Therein the court said: "It is not too much to hold that when a promise is expressly limited by a provision in the note itself, assignees should take it subject to such limitation. In our opinion, the special stipulation in the present note limits and qualifies the obligation to pay so that it is not absolute, but is a *prima facie* obligation subject to be defeated by the maker's defenses."

In the latter the note recited: "Payee's ownership of goods account of which this note is given, the account thereof and contract condition of original sale are not affected by accepting this note until receipt of full amount due thereon." It is to be observed also that in the decision the court makes a distinction between "title" and "ownership," stating that while there is a conflict of authorities as to whether the reservation of title makes the note negotiable, there is no authority holding a note negotiable where it recites that "ownership," that is, title and possession, was reserved. We may add that in the case at bar it is not disputed that possession of the tractor was delivered to the maker of the note.

2. When all the contemporaneous instruments constituting the transaction and known to the indorsee make it clear that the promise to pay is conditional upon the performance of certain acts by the payee. Of this line of cases we may

refer to *Robertson* v. *Kochtitzky* (Mo. App.), 217 S. W. 543, and *Dyer* v. *International Banking Corp.*, 262 Fed. 296.

In the former the court declared: "The note involved here does not fall within the negotiable instrument law (Mo. Laws 1905, p. 243). As it reads, it is a promissory note with conditions attached that take away from it its negotiability in that it expressly refers to and covers a contract outside of the note itself and made part of it." It may be added, however, that therein the action was between "the original parties to the note," so that the rights of a purchaser in good faith for value were not involved.

In the Dyer case, *supra,* the contract between the original parties provided that the money for which the note was given should not be paid until a certain transfer of property should be made and the evidence showed that said note and contract constituted one transaction of which the indorsee had notice. It was properly held that the note was non-negotiable.

3. Whenever the note (or some collateral agreement known to the indorsee) makes the note payable whenever the payee deems himself insecure, the due date is usually held to be uncertain and the note non-negotiable. For instance, in *Reynolds* v. *Vint,* 73 Or. 528 [144 Pac. 526], the supreme court of Oregon declared: "A note providing, as the note in suit does, that whenever Reynolds or his agents deem the note insecure they shall have the power to declare it due, even before maturity, is non-negotiable."

The same court followed the same rule in *Western etc. Co.* v. *Burnett,* 82 Or. 174 [161 Pac. 384], wherein the note provided that the payee or assigns "are hereby fully authorized and empowered to declare this note due any time they may feel insecure."

We can see no merit in the suggestion that the notes were rendered non-negotiable by the fact that the payee could retake the tractor in the event of failure of payment. That circumstance does not affect the absolute promise to pay. It simply gave the payee a choice of remedies when the notes became due, either to reclaim the chattel or to sue for the money.

Indeed, section 3086 of the Civil Code (Stats. 1917, p. 1533) provides that the negotiable character of an instrument otherwise negotiable is not affected by a provision

which "gives the holder an election to require something to be done in lieu of payment of money." So long as the maker's promise to pay is unconditional and absolute it makes no difference that the payee may not require payment but may resort to another remedy.

It is undoubtedly true, in the language of respondent, that "out of the necessities of trade and credit has grown the rule that an unconditional written promise to pay a sum certain at a fixed date, for practical purposes shall be regarded as money itself so that until nonpayment at maturity has raised some question as to the validity of the promise to pay, the note may pass from hand to hand free from defenses against original parties, its value determined only by the financial responsibility of the maker and by the rate of interest to be paid. If, however, the note itself, or some other written or oral understanding between the original parties of which the indorsee has notice, makes the time or amount of payment, or payment itself, uncertain or conditional, the instrument loses its character as mere future cash, that is, loses its negotiability, and the purchaser takes the instrument subject to all defenses existing between the original parties."

Within the contemplation of the foregoing principles we think the judgment should be affirmed, and it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 27, 1922.

All the Justices concurred.

Richards, J., *pro tem.,* and Myers, J., *pro tem.,* were acting.