## ALLAN v. MOLINE PLOW CO., Inc.

(Circuit Court of Appeals, Eighth Circuit. September 13, 1926.)

No. 7204.

**1. Fraudulent conveyances ☞241(5).**

Generally creditor may not sue to set aside fraudulent conveyance without first reducing his claim to judgment and having execution returned unsatisfied, though exception exists, where claim is admitted, and debtor has no assets subject to execution or is a nonresident.

**2. Fraudulent conveyances ☞241(5)—Note holder's suit against nonresident company to set aside conveyances held maintainable, though plaintiff had not reduced claim to judgment and had execution thereon returned unsatisfied.**

In note holder's suit to set aside alleged fraudulent conveyance by corporation, where indebtedness was admitted and corporation was a nonresident and had disposed of all of its assets, suit *held* maintainable, though plaintiff had not reduced his claim to judgment and had execution thereon returned unsatisfied.

**3. Fraudulent conveyances ☞255(3).**

Grantor is not an indispensable party defendant to a suit to set aside a fraudulent conveyance, where he has retained no interest, legal or equitable, in property conveyed.

**4. Fraudulent conveyances ☞255(3).**

Company which, after default in payment of notes pursuant to reorganization agreement, had conveyed all its assets to another company, *held* not an indispensable party defendant to note holder's suit to set aside such conveyance.

**5. Corporations ☞463.**

Corporation's notes, reciting that they were issued under a certain trust agreement, to which reference was made for description of terms under which notes were issued, *held* to sufficiently incorporate trust agreement as part of notes.

**6. Corporations ☞463.**

Recitals in corporation's notes that they were executed pursuant to trust agreement, to which reference was made for description of terms, *held* sufficiently to charge purchaser with notice of terms of agreement.

**7. Corporations ☞463.**

Limitations in corporation's trust agreement on noteholder's right to sue *held* not inconsistent with maker's promise to pay contained in note.

**8. Corporations ☞580.**

Limitations on note holder's right to sue, contained in trust agreement, *held* to apply, not only to suits or actions against corporate maker, but to suit against transferee of maker's assets pursuant to a reorganization.

**9. Corporations ☞463.**

Limitations on note holder's right to sue contained in trust agreement, *held* applicable alike to actions at law and suits in equity, particularly suit to set aside alleged fraudulent conveyance of corporate maker's assets.

**10. Corporations ☞463.**

Limitations on note holder's right to sue contained in trust agreement covering corporation's notes *held* applicable to note holder, suing for himself and for others similarly situated, as well as to suits brought for individual advantage.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Davis, Judge.

Action by George H. Allan against the Moline Plow Company, Incorporated. From a decree dismissing the bill, plaintiff appeals. Affirmed.

William R. Gilbert, of St. Louis, Mo. (Jesse A. Wolfort and Roscoe Anderson, both of St. Louis, Mo., on the brief), for appellant.

Sears Lehmann, of St. Louis, Mo. (S. O. Levinson, of Chicago, Ill., on the brief), for appellee.

Before LEWIS, Circuit Judge, and FARIS and PHILLIPS, District Judges.

PHILLIPS, District Judge. This is an appeal from an order dismissing the bill in a suit brought by George H. Allan against Moline Plow Company, Incorporated, a corporation organized under the laws of Virginia, hereinafter called the Virginia Company.

On September 1, 1918, the Moline Plow Company of Illinois, a corporation organized under the laws of Illinois, hereinafter called the Illinois Company, issued its 7 per cent. serial coupon notes payable to bearer, for the aggregate amount of $6,000,-000. Each note was for the principal sum of $1,000. They were issued in six series, designated as series A, B, C, D, E, and F, respectively. The notes of series A matured on September 1, 1919, B September 1, 1920, C September 1, 1921, D September 1, 1922, E September 1, 1923, and F September 1, 1924. Plaintiff was the owner of four series D notes. These notes contained, among other things, the following provision:

"This note is one of an issue of notes of the company, all of like date, tenor and amount, except as to the maturity thereof, which notes shall not exceed the aggregate principal amount of $6,000,000, and are all issued under and pursuant to a certain agreement, dated September 1, 1918, executed by the company and the Central Union Trust Company of New York, as trustee, to which agreement reference is hereby made for a description of the terms under which the said notes are issued and of the rights

and obligations of the company and the trustee with respect thereto.''

On September 1, 1918, the agreement referred to in the notes was duly made and entered into between the Illinois Company and the Central Union Trust Company of New York. In this agreement, the Illinois Company is called the company and the Central Union Trust Company is called the trustee. This agreement, among other things, contained the following provisions:

''Now, therefore, in consideration of the premises and of the purchase and acceptance of the notes by those who shall hold the same from time to time, the parties hereto hereby covenant and agree, for the equal benefit, security and protection of the legal holder or holders of any and all of the notes and coupons, without preference, priority or distinction of any of the notes or coupons over any of the other thereof, by reason of priority in the time of issue, negotiation or maturity thereof, or otherwise howsoever, as follows:

\*   \*   \*   \*   \*   \*   \*

''Article IV. Remedies in Case of Default.

''Section 1. If default be made in the payment of the principal of any of the notes, or if default be made in the payment of any installment of interest thereon and such default shall continue for 60 days, or if default be made in the performance of any other covenant, condition or agreement on the part of the company in the notes or in this agreement contained and such default shall continue for 60 days after written notice shall have been given to the company by the trustee, which shall give such notice upon the written request of the holders of 25 per cent. in amount of the notes then outstanding, then, in each and every such case, the trustee, by written notice to the company may, and shall upon the written request of the holders of 25 per cent. in amount of the notes then outstanding, declare the principal of all the notes of all series then outstanding to be due and payable immediately, and, upon such declaration, the same shall become immediately due and payable, anything in this agreement or in the notes contained to the contrary notwithstanding. \* \* \*

''Section 2. If default be made by the company in the payment of interest on or principal of any of the notes, whether the same shall become due by maturity, declaration, notice of redemption or otherwise, or if default be made by the company in the performance of any other covenant, condition or agreement on the part of the company in the notes or in this agreement contained, then, in each such case, upon demand of the trustee, the company agrees to pay to the trustee for the benefit of the holders of the notes and coupons then outstanding, the whole amount then due and payable on all such outstanding notes and coupons, with interest upon overdue installments of interest at the rate of 7 per cent. per annum, and, in addition thereto, such further amount as shall be sufficient to cover the cost and expenses of collection, including a reasonable compensation to the trustee, its agents, attorneys and counsel, and any expenses or liabilities incurred by the trustee hereunder, and in case the company shall fail to pay the same forthwith upon demand, the trustee, in its own name and as trustee of an express trust, shall be entitled to recover judgment against the company for the whole amount due and unpaid and to issue execution thereon against the whole or any part of the property of the company, real or personal. \* \* \*

''Section 3. All remedies conferred by this agreement shall be deemed cumulative and not exclusive, and shall not be so construed as to deprive the trustee of any legal or equitable remedy by judicial proceedings appropriate to enforce the conditions, covenants and agreements of this agreement.

''Section 4. No holder of any note issued hereunder shall have the right to institute any suit, action or proceeding, at law or in equity, for the collection of any sum due from the company on such note, for principal or interest, or upon or in respect of this agreement, or for the execution of any trust or power hereof, or for any other remedy under or upon this agreement, unless such holder shall previously have given to the trustee written notice of an existing default, and unless, also, such holder or holders shall have tendered to the trustee security and indemnity satisfactory to it against all costs, expenses and liabilities which might be incurred in or by reason of such action, suit or proceeding, and unless, also, the holders of 25 per cent. in amount of the notes then outstanding shall have requested the trustee in writing to take action in respect of such default and the trustee shall have declined or failed to take such action; it being intended that no one or more holders of notes shall have any right in any manner to enforce any right hereunder, or under or in respect of any of the notes, except in the manner herein provided, and for the equal, proportionate benefit of all holders of the outstanding notes.''

In the industrial depression that followed the World War, the Illinois Company found itself in financial difficulties. A reorganization committee was formed and the following plan of reorganization was agreed upon and carried out:

The Virginia Company was organized. The property and assets of the Illinois Company were transferred to the Virginia Company. The Virginia Company issued, and delivered to the reorganization committee, debenture bonds due in 1941, of the aggregate face value of $12,500,000, 7 per cent. cumulative first preferred stock, of the aggregate par value of $12,500,000, 7 per cent. noncumulative second preferred stock, of the aggregate par value of $7,500,000, and 199,500 shares of common stock, of no par value. The securities were dated September 1, 1921. Each of the creditors who joined in and accepted the reorganization plan, including the holders of the serial notes issued September 1, 1918, received for each $1,000 of indebtedness held by them 7 per cent. debentures of the par value of $500, new first preferred stock of the par value of $500, and 2½ shares of the new common stock. For each share of first preferred stock outstanding of the Illinois Company, one share of new second preferred stock was issued. For each share of second preferred stock outstanding of the Illinois Company three-fifths of a share of new common stock was issued. For each share of common stock outstanding of the Illinois Company, one-eighth share of new common stock was issued.

The reorganization agreement provided that no dividends should be paid on the second preferred and common stock until the bonds and the first preferred stock with interest thereon and dividends had been paid and retired. It provided further that "the claims of all creditors (except those to be paid in accordance with paragraph 7 of this offer) whether they have or have not heretofore signed and accepted the plan and agreement of reorganization, shall be treated on a plane of exact equality." Paragraph 7 referred to above made provision for the payment of current liabilities of the Illinois Company, not to exceed $700,000. The Virginia Company assumed current obligations of the Illinois Company aggregating approximately $700,000. 96½ per cent. of the note holders and 99½ per cent. of the other creditors accepted the plan and exchanged their notes and claims for the new securities.

Thereafter, and on September 26, 1925,

without complying with the provisions of the trust agreement, the plaintiff brought this suit against the Virginia Company, setting up that he was the owner of four notes; that the same were due and unpaid; that pursuant to the plan of reorganization, the assets of the Illinois Company had been transferred to the Virginia Company in exchange for securities issued to the reorganization committee; that such transfer was in fraud of the creditors of the Illinois Company, including the plaintiff, and prayed that the Virginia Company "be adjudged and decreed to hold said assets so received from the Moline Plow Company of Illinois for the benefit of the plaintiff and all other creditors of the Moline Plow Company of Illinois who did not join in said reorganization scheme and who shall care to join plaintiff in the prosecution of said suit and that judgment be rendered against said defendant (Virginia Company) and in favor of the plaintiff for four thousand ($4,000) dollars and interest from September 1, 1920, at the rate of seven (7) per cent. per annum and in favor of such other creditors as may intervene in this suit, and prove up their claims for the amount of their claims and that plaintiff be allowed reasonable expenses for counsel fees and other expenses."

The Virginia Company filed an answer to the bill of plaintiff in which it set up the above quoted provisions of the trust agreement limiting the right of a note holder to sue, and alleged that the plaintiff had failed to comply therewith, that the plaintiff had not obtained a judgment at law against the Illinois Company, and that the Illinois Company was a necessary and indispensable party to the suit.

The cause duly came on for trial and the facts above stated appeared without dispute. The trial court found the issues for the Virginia Company and dismissed the bill.

[1] I. We will first consider the defenses raised by the answer which do not go to the merits.

The general rule is that before a simple contract creditor may maintain a bill in equity to set aside a fraudulent conveyance, he must first reduce his claim to judgment, have an execution issued thereon and have it returned unsatisfied. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 378, 14 S. Ct. 127, 37 L. Ed. 1113; Cates v. Allen, 149 U. S. 451, 457, 13. S. Ct. 883, 977, 37 L. Ed. 804; Gillespie v. Riggs (C. C. A. 4) 253 F. 943, 165 C. C. A. 385; Williams v. Adler-Goldman Commission Co. (C. C. A. 8) 227

F. 374, 142 C. C. A. 70; Id. (D. C.) 211 F. 530; 27 C. J. p. 726, § 579, p. 739, § 601. [2] To this general rule there are well recognized exceptions. Where the creditor's claim is admitted and the debtor has no assets subject to execution or is a nonresident and beyond the reach of the process of the court, a judgment and the return of an execution unsatisfied are not prerequisites to equitable relief. Williams v. Adler-Goldman Commission Co., supra; National Tube Works v. Ballou, 146 U. S. 517, 523, 13 S. Ct. 165, 36 L. Ed. 1070; Case v. Beauregard, 101 U. S. 688, 690, 25 L. Ed. 1004; Bank of Commerce & Trusts of Richmond v. McArthur (C. C. A. 5) 256 F. 84, 167 C. C. A. 326; Sanborn v. Maxwell, 18 App. D. C. 245, 248; 27 C. J. pp. 730–732, §§ 583–587. The facts in the instant case bring it within the exception. The indebtedness sued upon is admitted. The Illinois Company has disposed of all of its assets. It is a citizen and resident of the state of Illinois and beyond the reach of the process of the United States court for the Eastern district of Missouri. We therefore conclude that a judgment at law and the return of an execution unsatisfied were not prerequisites to the right of the plaintiff to maintain this suit.

[3, 4] In a suit to set aside a fraudulent conveyance, the grantor is not an indispensable party defendant where he has retained no interest, either legal or equitable, in the property conveyed. The reasons for the rule are these: The property in such a case has irrevocably passed from the grantor's control; he cannot be prejudiced by a decree which subjects such property to the payment of his debts; and he cannot enjoy any of the fruits of a successful prosecution of the suit to set aside the fraudulent conveyance, for, after the creditor's demand is satisfied, the remainder of the fund goes to the fraudulent grantee. Strong v. Texas Co., 70 Colo. 546, 203 P. 675; Blanc v. Paymaster Mining Co., 95 Cal. 524, 30 P. 765, 766, 29 Am. St. Rep. 149; Westcott v. Sioux City, 141 Iowa, 453, 119 N. W. 749, 751; Potter v. Phillips, 44 Iowa, 353; Metzger v. Burnett, 5 Kan. App. 374, 48 P. 599, 600; Campbell v. Jones, 25 Minn. 155; Taylor v. Webb, 54 Miss. 36, 42; Schneider v. Patton, 175 Mo. 684, 75 S. W. 155, 167; Glover v. Hargadine-McKittrick Dry-Goods Co., 62 Neb. 483, 87 N. W. 170, 171; Coffey v. Norwood, 81 Ala. 512, 8 So. 199; Kir`eon v. Bonsall, 194 App. Div. 110, 185 N. Y. S. 694; Bank of Commerce & Trusts of Richmond v. McArthur, supra; Buffington v. Harvey, 95 U. S. 99, 102, 24 L. Ed. 381. In the instant case, the Illinois Company retained no interest in the property conveyed. The decree prayed for, if granted, would in nowise injuriously affect the Illinois Company. The result would be that the Virginia Company would pay the plaintiff in cash instead of securities as provided in the reorganization agreement. We conclude therefore that the Illinois Company was not an indispensable party defendant.

II. Plaintiff asserts that the provisions of the trust agreement do not preclude him from maintaining this suit. He predicates his position upon six principal contentions. These will be stated and considered seriatim:

[5] First. Plaintiff contends that the terms and provisions of the trust agreement are not by reference incorporated into and made a part of the notes.

Each note contains on its face the following recitals:

"This note is one of an issue of notes of the company * * * all issued under and pursuant to a certain agreement, dated September 1, 1918, executed by the company and the Central Union Trust Company of New York, as trustee, to which agreement reference is hereby made for a description of the terms under which the said notes are issued and of the rights and obligations of the company and the trustee with respect thereto."

This recital clearly makes the applicable provisions of the trust agreement a part and parcel of the terms of the notes as effectually as if they were written into the notes themselves. Crosthwaite v. Moline Plow Co. (D. C. N. Y.) 298 F. 466; McClure v. Township of Oxford, 94 U. S. 429, 433, 24 L. Ed. 129; Babbitt v. Read (C. C. A. 2) 236 F. 42, 44, 149 C. C. A. 252; National Salt Co. v. Ingraham (C. C. A. 2) 122 F. 40, 45, 58 C. C. A. 356; Batchelder v. Council Grove Water Co., 131 N. Y. 42, 29 N. E. 801; McClelland v. Norfolk S. R. Co., 110 N. Y. 469, 18 N. E. 237, 239, 1 L. R. A. 299, 6 Am. St. Rep. 397; Watson v. Chicago, R. I. & P. Ry. Co., 169 App. Div. 663, 155 N. Y. S. 808, 810; People's Bank v. Porter, 58 Cal. App. 41, 208 P. 200, 203, 8 C. J. p. 196, § 327; 3 R. C. L. p. 870, § 54.

[6] Second. Plaintiff says that he took the notes held by him without notice of the terms of the trust agreement limiting the right of a note holder to sue, and that the recitals in the note did not charge him with notice of such terms.

The recital above referred to clearly gave notice to the purchaser of a note that

its terms were limited by the provisions of the trust agreement, and charged such purchaser with notice of every applicable provision in the agreement. National Salt Co. v. Ingraham, supra; McClure v. Township of Oxford, supra; People's Bank v. Porter, supra.

[7] Third. Plaintiff asserts that the notes and coupons contain a direct and unequivocal promise to pay, and that such promise cannot be limited by inconsistent provisions in the trust agreement.

The limitations in the trust agreement on the right of note holders to sue are not inconsistent with the promise of the Illinois Company to pay. They do not prohibit action against the Illinois Company for the enforcement of the notes, but they protect against action by less than 25 per cent. of the note holders which the other note holders believe would be disadvantageous to the note holders as a class. These provisions were not written into the trust agreement for the benefit and protection of the Illinois Company, but for the benefit and protection of the note holders. They, in effect, provide that, if the Illinois Company shall fail to pay the notes, not less than 25 per cent. in amount of the note holders shall determine upon a course of action which will best subserve the interest of the note holders as a class. These provisions, therefore, do not in any wise limit the liability of the Illinois Company to pay, but they restrict the method of enforcing payment in the event of default. Crosthwaite v. Moline Plow Co., supra; Batchelder v. Council Grove Water Co., supra.

In the latter case the court said:

"If the method provided by the mortgage be pursued, it subjects the action to be taken by the bondholders to the will of a majority, and insures that course of action, with respect to the property of the debtor, which will inure to the best interest of the bondholders as a class. This prevents individual bondholders from pursuing an individual course of action, and thus harassing their common debtor, and jeopardizing the fund provided for the common benefit. The manifest equity and justice of such a proceeding indicates the intent of the parties in drafting the form of the bond. * * * Any other holding would authorize the individual bondholders to pursue the company and strip it of its present funds and rights of action, and destroy its capacity to carry on its business, and thereby protect its creditors. It is not reasonable to suppose that the bondholders, as a class, intended to make a contract which should lead to that result."

[8] Fourth. Plaintiff contends that the provisions of the trust agreement limiting the right of note holders to sue upon the notes apply only to suits or actions against the Illinois Company.

Plaintiff bases this contention upon the provisions of section 2 of article IV of the trust agreement, which provides that the trustee may bring an action at law against the Illinois Company, recover judgment and cause execution to be issued thereon in his own name. Counsel for the plaintiff overlook the provisions of section 2 of the same article, which provide that all remedies conferred by the agreement shall be deemed cumulative, and not exclusive, and shall not be construed to deprive the trustee of any legal or equitable remedy by judicial proceedings appropriate to enforce the conditions, covenants and agreements of the trust agreement. The primary object of a creditor's bill is to collect an obligation due the plaintiff. Its purpose is to reach assets of the debtor beyond the reach of legal execution. It is in the nature of an equitable execution. If the Illinois Company had made a transfer of assets in fraud of its creditors, a creditor's bill in behalf of the note holders, by the trustee against the fraudulent transferee, to reach such assets, would have been a judicial proceeding appropriate to enforce the conditions, covenants and agreements of the trust agreement, and therefore clearly within the express provisions of that agreement.

[9] Fifth. Plaintiff contends that the provisions of the trust agreement limiting the right of note holders to prosecute actions to enforce the notes apply only to actions at law and do not include suits in equity.

The limitations set out in section 4 are not applicable alone to actions at law. The provision is that no note holder shall have the right to institute any suit, action or proceeding at law or in equity for the collection of any sum due from the Illinois Company on such note for principal or interest or upon the agreement unless the holders of 25 per cent. in amount of the notes then outstanding shall have requested the trustee in writing to take action and he shall decline or fail to take such action. This clearly contemplates that a demand upon the trustee and his refusal to act shall be a condition precedent to the right to institute any suit, action or proceeding at law or in equity to enforce payment of the notes. Surely the agreement would not require a vain or use-

less thing. If the trustee were not empowered to maintain suits in equity, the trust agreement would not require a demand upon him to commence such suit and his refusal before a note holder would be authorized to institute such a suit. In addition thereto, there is the general language in the closing paragraph of section 4 of article IV that "no one or more holders of notes shall have any right in any manner to enforce any right hereunder, or under or in respect of .any of the notes, except in the manner herein provided." A creditor's bill is a suit to enforce a right under, and in respect of, the notes, and is expressly prohibited by the provisions of section 4 in the absence of a demand upon the trustee by holders of 25 per cent. in amount of the notes to bring such suit and his refusal so to do. The limitations upon the right of a note holder to sue clearly apply both to actions at law and suits in equity.

[10] Sixth. Finally plaintiff asserts that the limitations in the trust agreement apply only to suits brought by a note holder individually for his individual advantage, and that, since this suit is prosecuted for the benefit of all the note holders in the same situation as the plaintiff, it does not come within the purview of the trust agreement.

In our opinion, this contention is equally untenable. It was clearly the purpose of the trust agreement to provide that no action should be taken by a note holder that did not have the approval of at least 25 per cent. in amount of the holders of the notes.

We therefore conclude that the provisions of the trust agreement prohibited plaintiff from maintaining this suit until demand had been made upon the trustee by at least 25 per cent. in amount of the note holders to prosecute the suit and the trustee had refused so to do. It follows that the very contract upon which plaintiff's cause of action is predicated provides that he shall not maintain this suit until the performance of a condition precedent which has not yet been performed.

The decree is affirmed, with costs.