VIRA CORNELL KINEON, Respondent, *v.* SEYMOUR W. BONSALL and MARGARET M. BONSALL, Defendants, Impleaded with HELEN GREIFF and OSCAR N. HOFFMAN, Appellants.

Second Department, December 17, 1920.

Debtor and creditor — action to sequester corporate stock transferred by debtor to third persons and to have same applied to payment of judgment — transfer without consideration — gifts — burden of proof to show that transfers left debtor solvent — trial — refusal to find that transfer left debtor solvent as sufficient to sustain judgment — trusts — commingling trust funds by debtor with own funds by investment — when equity will impress trust.

In an action by a judgment creditor to sequester corporate stock transferred by the debtor to third persons and to have the same applied on the judgment, *held*, on all the evidence that the transfer of the stock to the defendants, employees of the judgment debtor, was made without consideration and constituted gifts;

That the antecedent promises of the judgment debtor as testified to by the defendants on which the transfer was alleged to have been based amount to nothing more than a general promise to give a bonus, which cannot make the transfer one for a consideration.

The finding that the transfers were purely voluntary placed upon the defendants the burden of showing that the transfers left the debtor solvent.

The refusal of the trial court to find that the transfers left the debtor solvent is sufficient to sustain a judgment in favor of the creditor without the affirmative finding that the transfers left the debtor insolvent.

The equity of the judgment directing the application of the stock to the payment of the judgment against the transferor may be sustained on the ground that the debtor held toward the plaintiff, his stepdaughter and practically his ward, the position of a trustee, and having commingled her funds, for which the judgment was recovered, with his own, by

investment in such a way that it became extremely difficult if not impossible to separate them, equity impressed upon the whole a trust in her favor, so that, in her behalf, any part of it may be seized and applied *pro tanto* to the satisfaction of her judgment.

As the transfer by the judgment debtor to the defendants was absolute, so far as the record shows, he was not a necessary party to the action.

APPEAL by the defendants, Helen Greiff and another, from so much of a judgment ·of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 3d day of July, 1920, upon the decision of the court rendered after a trial at the Westchester Special Term, as grants equitable relief by way of holding void certain transfers of stock by Seymour W. Bonsall to the defendants and applies said stock towards .the payment of a judgment previously obtained in another action by the plaintiff against Bonsall.

*Abraham Benedict* [*Adam K. Stricker* and *Lee Parsons Davis* with him on the brief], for the appellants.

*Frank A. Gaynor* [*John F. Brennan* with him on the brief], for the respondent.

MILLS, J.:

This is one of several litigations between Bonsall and his stepdaughters, Mrs. Kineon and Mrs. Shiverick, of which several have come to this court within recent years. In fact each recent volume of the reports of this court contains one of those cases. A brief summary of the situation may be helpful.

The mother of the two now young women was widowed when they were very young, but left by her husband with a considerable estate amounting to several hundred thousand dollars. In a few years she married Bonsall and soon thereafter died, leaving a will which gave to him her entire estate; and I have never been able in any of the several records of those appeals to find any evidence that he ever had any property except that which his wife thus gave him and its proceeds. After a time he brought from New Hampshire his mother and installed her as the mistress of his home; and the two girls grew up together in that home in very much the relation of daughters, with the two Bonsalls as parents; and

when they reached their maturity married; and to each the Bonsalls made a substantial wedding present, which, by the way, was no more than they ought to have done, as the present had its undoubted source in the fortune of the real mother. The gift to Mrs. Shiverick was of the home at Mamaroneck; and the Bonsalls continued to live there with that young couple. In time a daughter was born to the Shivericks, and when she was about a year old the so-called grandmother, Mrs. Bonsall, took the child out riding against the wishes of the mother, Mrs. Shiverick; and upon being upbraided by the mother for so doing became angry and, refusing to accept the mother's apology freely tendered in a few hours, left the home and returned to New Hampshire. In a few months she reappeared at the Mamaroneck home and demanded the surrender to her of substantially all the furnishings of it, even the rugs, which had been expressly made for it, upon the claim that Mr. Bonsall had given them to her. Her demand was refused, whereupon she brought action in this court to recover the value of the furnishings as for conversion. At the Trial Term she succeeded by the verdict of a jury in establishing her claim and recovered a judgment for upwards of $11,000. Upon appeal here we reversed and granted a new trial, the majority of the court so deciding only upon the ground of an error of law in a ruling upon a question of evidence. (*Bonsall* v. *Shiverick*, 184 App. Div. 904.) The presiding justice and I were also of the opinion that the verdict was clearly against the weight of the evidence; indeed I was convinced that the recovery constituted a decided injustice. Upon appeal the Court of Appeals reversed our decision and affirmed the judgment of the Trial Term, being of the opinion that the erroneous ruling was not of sufficient substance to warrant a reversal. (229 N. Y. 518.) The girls, before attaining age but after their mother's death, each inherited from another source a considerable sum, upwards of $300,000. While they were minors Bonsall applied to the Surrogate's Court to be appointed their guardian, but his application was denied. Upon their reaching full age and receiving their properties they respectively turned them over to him, each practically intrusting him with the management of her fortune, giving him full power of attorney under which he exercised entire control of it. He claims to have invented

a wardrobe trunk which he styled "The Innovation Trunk;" and in various ventures allied with the business of its manufacture and sale, he used a large part of the fortune of each young woman, but at the time with her nominal consent. After the furniture episode, each of the young women called upon Bonsall to account for her estate in his hands. He failed to do so, or at least did not to their satisfaction. Each thereupon brought in this court an equity action for such an account and an incidental recovery. Mrs. Shiverick's case was tried at the Westchester Special Term, and resulted in a practical success for Bonsall, at least to the extent that he was permitted to saddle upon her the investments which he had made with her moneys. Upon appeal here we affirmed the judgment in his favor, Mr. Justice PUTNAM writing, but I dissented. The ground of our affirmance was that she and her husband had by various acts ratified Bonsall's investments, although they were such that she had originally the right to disaffirm. I dissented upon the ground that her such acts were all performed while she was subject to his influence. (*Shiverick* v. *Bonsall*, 185 App. Div. 338.) Leave to appeal to the Court of Appeals was here denied (187 App. Div. 941), there being no right to such appeal as the judgment was in part interlocutory. Here again I venture to say that I still think that the judgment did injustice.

The companion or corresponding action of Mrs. Kineon was tried at the Westchester Special Term, another justice presiding, and resulted in a complete success for her, giving her a recovery against him for the sum of $385,819.93; and her judgment was unanimously affirmed by this court and by the Court of Appeals (*Cornell* v. *Bonsall*, 187 App. Div. 904; 228 N. Y. 532), although the facts were at least to my mind substantially the same in her case as in the like one of her sister. It may, however, be remarked that, although successful in obtaining a judgment, she has, so far as a real result is concerned, fared no better, except in the matter of adjudged costs, than the other sister who was defeated; as Bonsall thus far has been able to stand "execution proof," execution having been duly issued against him and returned unsatisfied.

In the conduct of his trunk business Bonsall was prolific of corporations, viz.:

One the " Innovation Trunk Company," to hold the patents and actually manufacture; another, the " Innovation Ingenuities, Inc.," to market the product, having an agreement to pay to the former corporation cost and ten per cent; another the " Precious Woods Handling Company " to purchase timber land and furnish material; and still another the " S. W. Bonsall Timber Properties, Ltd.," which had some not clearly explained dealings in California lands, also for timber purposes. Originally the stock of all belonged, at least nominally, to him, excepting a share to each of several employees to qualify to act as directors. In or about December, 1912, he was threatened by one Montpelier with litigation, and being apprehensive of the result he transferred his property to the two young women, they being then practically his wards. Certain land in Mamaroneck, which had been part of the transfer to Mrs. Shiverick, formed the basis of his action subsequently brought to compel her to reconvey the same to him, the Montpelier threat having proved abortive and Mrs. Shiverick evidently having attempted to hold on to the property as some indemnity in her favor against him. In that action he succeeded, and his judgment was affirmed in this court and by the Court of Appeals. (*Bonsall* v. *Shiverick*, 186 App. Div. 958; 228 N. Y. 527.) When the Montpelier litigation was threatened Bonsall held ninety-eight of the one hundred shares of the stock of the " Innovation Trunk Company," and, as part of his transfer to avoid the Montpelier threat, he transferred his certificate of that stock to Mrs. Shiverick and had her indorse in blank the one reissued to her and at once deliver it to him. Subsequently in March, 1914, he surrendered that certificate and in place of it had four certificates issued to him, viz., one for forty shares, one for thirty, one for twenty and one for seven shares; and the same day surrendered the first three and, in place of them, had the officers of the company, he being then president, issue a certificate in the name of Jacob Henry for forty shares, another for thirty shares in the name of the defendant Hoffman, both of whom were employees of the company and had long been associated with him, and another for twenty shares in the name of the defend-

ant Greiff, who had for several years been his secretary. Each of those three latter certificates was indorsed in blank by the nominal holder and delivered to defendant Greiff. About August, 1918, Henry died; and shortly thereafter, and after the entry of the said judgment in favor of the plaintiff, said Greiff surrendered the said certificate which had been issued to Henry and in its place had two certificates issued, one for twenty and one-half shares to said Hoffman and another for the same number to her. Prior to March, 1914, the defendants knew that Bonsall was using the money of the plaintiff and was even then indebted to her in about the sum of $198,000. Execution upon plaintiff's said judgment having been returned unsatisfied, she, on May 1, 1919, began this action to have that stock sequestered and applied to the payment of her judgment. Trial was had at the Westchester Special Term and resulted in a judgment for the plaintiff in effect granting the said relief to her; and by the appeal of the said defendants the same is now here for review.

The defendants at the trial claimed:

(a) That the transfers by Bonsall of the stock in March, 1914, were made in consideration of his agreement made long previously, to the effect that, for their work for him and his corporations, he would, in addition to their stated salaries, give to them, the several transferees, an interest in the business; and

(b) That at the time of those transfers Bonsall was by them left amply solvent so far as any claim of the plaintiff is concerned.

The learned trial justice in his decision found:

(a) That those transfers were all without consideration; and

(b) That they were made and accepted in furtherance of a scheme to place Bonsall's property out of the reach of the plaintiff and to guard it against the contingencies of his business. But he made no affirmative finding as to Bonsall's financial situation after those transfers were made. Moreover, he declined to find at the request of the defendants that he was then left solvent.

The contentions of the appellants here appear to be three-fold, namely:

(a) That there was no proof that the transfers to Henry and to defendants were gifts, *i. e.,* without consideration; but that the weight of the evidence was that they were payments for services rendered;

(b) That even if the promise to give an interest in the business was too indefinite for legal enforcement it did entitle the promisee to sue and recover upon a *quantum meruit;* and

(c) That there was no proof that Bonsall was not after those transfers left fully solvent. ·

I conclude that neither of these contentions is well made.

As to the first of them, it is true that the surviving transferees testified most amply to the antecedent making by Bonsall of the alleged promises; yet the circumstances were all so suspicious that I think that the learned justice was amply justified in disbelieving their evidence. The idea that in the emergency of his business he would turn over to his employees practically his entire interest in it as additional compensation for past services seems upon its face so improbable as to require very satisfactory evidence, not alone to warrant but, as is the test here, to require its finding. The trial justice had the parties before him under examination and personal view; and evidently he did not believe them as witnesses and neither do I from the record.

In the next place, I conclude that the antecedent promise as testified to by each of the defendants was too general and too indefinite to warrant any recovery thereon. It was at most only a general promise to give a bonus, which we have lately had occasion to hold ineffective. (*McDonald* v. *Acker, Merrall & Condit Co.,* 192 App. Div. 123.) The testimony as to the terms of the promises was quite general, those to Henry, " If anything comes of this thing, you will naturally be taken care of; " " That they [meaning the employees who stayed] would receive an interest in the business; " that the business would ultimately go to the " loyal employees; " " that those people around him who had contributed to the success of the business would participate eventually, through ownership, in proportion as they had contributed to that success; " " Those who helped me to make it [the business] will get it; " " Jake [meaning Henry] has a personal interest in this matter; " and again, " Jake understands his interest

in it; " and " I am certainly going to take care of him [Henry]." The promises to Hoffman as testified to were of the same general character; and, as to Miss Greiff, about as definite as any was this: " He wanted me to understand   *   *   * that I was to get my share, with the boys." Meanwhile during all those years those employees were receiving their regular salaries week by week, and some of them a special commission or royalty besides. Appellants' brief makes much of the fact that one Platt, a former employee who had left the employment, sued Bonsall upon a like promise in the Federal court and recovered a substantial judgment. (*Bonsall v. Platt*, 153 Fed. Rep. 126.) I note that the brief incidentally states that Platt testified at the trial of that action that Bonsall had promised him a " half interest." That was a definite promise, upon which a recovery could well be predicated. From the evidence for the defense, if credited, it would seem that it was a veritable fad with Bonsall to promise any and all of his employees of whatever grade to give them or him an interest in the business and, as it were, to " jolly them along " in that way. This seems improbable. However that may be, assuming it all to be true, it is small wonder that the several transferees, as Bonsall testified, were surprised when he actually gave them the stock; neither is it remarkable that at the trial of the other action defendant Hoffman, in answer to a question by the presiding justice, declared that the transfer of the stock by Bonsall to him was an absolute gift. His effort at this trial to explain away that testimony was exceedingly lame.

As to the second contention of appellants here, namely, that the promises at least warrant a recovery of something upon a *quantum meruit* and so constituted sufficient consideration, the finding that the transfers were gifts involved a finding contrary to this contention. I think that such finding was fully warranted. Henry had all the time, or much of it, a royalty in addition to his salary; and the salary of thirty-five dollars to forty dollars a week paid to Miss Greiff was in those years ample compensation in this locality for the services of a woman secretary as Miss Greiff was. Hoffman, moreover, was in receipt of a very substantial salary, seventy-five dollars a week.

As to appellants' third contention, namely, that there was

no proof that Bonsall was not by those transfers still left perfectly solvent, it is true that the decision contains no affirmative finding that the transfers left him insolvent so as thereafter to be unable to satisfy the plaintiff's then claim. The finding that the transfers were purely voluntary served to place upon the defendants the burden of proving that they still left Bonsall solvent. Therefore, the refusal to find that fact, namely, that they still left him solvent, is sufficient to sustain the judgment without the affirmative finding that they left him insolvent. That refusal was warranted, as the values placed by Bonsall in his evidence upon his assets were evidently greatly overestimated. The chief item of his assets was the stock of the Ingenuities Company, which apparently represented nothing but the selling agency of the trunk business. In the tax return of that company that stock, with Bonsall's knowledge, was valued at only one dollar and twenty-five cents a share.

Moreover, the equity of the judgment may be sustained upon the following ground: Bonsall towards his stepdaughter, then practically his ward, held in equity the position of a trustee. As such he commingled her funds with his own by investment in such a fashion that it became extremely difficult, if not impossible, to separate them. Under those circumstances equity impressed upon the whole a trust in her favor so that in her behalf any part of it may be seized and applied *pro tanto* to the satisfaction of her judgment. Upon the whole I am satisfied that the judgment appealed from is entirely just and well warranted by the evidence.

Appellants further contend here that the case should not have gone to trial without bringing in Bonsall as a party defendant. The evidence, however, indicated that, as between the donor and the donee, the gift of the stock was absolute, however improbable that may be; and, therefore, he was not a necessary party to this action.

Therefore, I advise that the judgment appealed from be affirmed, with costs.

Present — JENKS, P. J., MILLS, RICH, PUTNAM and KELLY, JJ.

Judgment unanimously affirmed, with costs.