**LICHTER, Plaintiff-Appellant, v. LAND TITLE GUARANTEE AND TRUST CO., etc., et, Defendants-Appellees.**

Ohio Appeals, Tenth District, Franklin County.

No. 5432.   Decided March 4, 1957.

Steer, Strauss & Adair, Charles Tobias, of Counsel, Cincinnati, McClelland & DeVennish, Joseph DeVennish, of Counsel, Columbus, for plaintiff-appellant.

Arter, Hadden, Wykoff & VanDuzer, Cleveland, Clinton M. Horn, of

Counsel, Porter, Stanley, Treffinger & Platt, Raymond H. Treffinger, Bruce G. Lynn, of Counsel, Columbus, for defendant-appellee, The Land Title Guarantee and Trust Company.

Ruth Lloyd Wilkins, General Counsel, Columbus, Squire, Sanders & Dempsey, L. E. Oliphant, Jr., of Counsel, Cleveland, for defendant-appellee, Ohio Turnpike Commission.

Bricker, Marburger, Evatt & Barton, John M. Caren, of Counsel, Columbus, for defendant-appellee, The Ohio National Bank.

(HORNBECK, J, of the Second District, sitting by designation in the Tenth District.)

## OPINION

By HORNBECK, J.

This is an appeal from a judgment of the Common Pleas Court dismissing the amended petition of plaintiff after sustaining demurrers thereto and denying the motion of plaintiff for leave to file an amendment to the first cause of action of the amended petition.

Each defendant demurred to the four causes of action set out in the amended petition on the grounds that plaintiff has not legal capacity to bring or maintain the action against the defendant, and, that the amended petition does not state facts sufficient to show a cause of action against the defendant. Other demurrers asserted misjoinder of parties defendant and misjoinder of causes of action. The Court did not pass on these last two demurrers but sustained the first two. The appeal is prosecuted to the judgment only as affected by the sustaining of the demurrer to the first cause of action, to the fourth cause of action of the amended petition and to the refusal of the Court to grant plaintiff's motion for leave to file an amendment to the fourth cause of action of the amended petition.

Hereinafter in this opinion we refer to the defendant, The Land Title Guarantee and Trust Company, as Land Title Co., defendant, The Ohio National Bank of Columbus as Ohio National, and defendant, The Ohio Turnpike Commission as the Commission.

Plaintiff, in his first cause of action, seeks relief against defendants, Land Title and Ohio National, as a holder of five $1000.00 bonds of the Ohio Turnpike, in behalf of all bondholders. Plaintiff prays that defendant, Land Title, be held primarily liable for the return of $250,000.00 paid to it by the Commission through its Trustee, defendant, Ohio National, by reason of the performance by Land Title of a contract declared by the Common Pleas Court of Franklin County to be void because part of the services rendered thereunder constituted the practice of law by a corporation.

The fourth cause of action alleged a breach of duty on the part of

344

the Trustee, The Land Title, in that it illegally honored a requisition of the Commission for the payment of the funds in question to the defendant, The Land Title. The motion for leave to amend was filed after the Court had decided the demurrers. We will state the subject matter of this motion hereinafter.

We have been favored with the opinions of Judge Leach in the Common Pleas Court on all grounds of the demurrer to the amended petition and on the motion for leave to amend. These opinions disclose careful and detailed examination and consideration of every aspect of the respective claims of the parties. We are in accord with the conclusions reached by Judge Leach on the matters for adjudication here and might well affirm on these opinions. However, inasmuch as counsel have fully and comprehensively argued this appeal both by brief and oral presentation, we comment, as briefly as possible, upon so much of the issues as we deem to be dispositive of the appeal.

Plaintiff asserts his rights to institute the action on behalf of all bondholders of the Turnpike Bonds, the Trustee, defendant, The Ohio National, having refused to institute the suit. Although plaintiff holds bonds of the value of only $5000.00 in an issue of $326,000,000.00, he claims the right to sue for all bondholders under the general rule that a bondholder may prosecute such a suit, 54 Am. Jur. 57, and also by authority of statute, §5537.15 R. C., which statute is pleaded in the amended petition. This statute, after recognizing the general rule as to the right of a bondholder to institute an action or suit on behalf of all bondholders, carries this language:

"* * * except to the extent the rights given by such sections" (to holders of bonds by §§5537.01 to 5537.23 inclusive, R. C.), "may be restricted by such trust agreement, * * *."

Sec. 5537.12 R. C., stating what may be contained in a trust agreement between the Commission and its trustee, inter alia provides:

"* * * Any such trust agreement may set forth the rights and remedies of the bondholders and of the trustee, and may restrict the individual right of action by bondholders as is customary in trust agreements or trust indentures securing bonds or debentures of corporations. Such trust agreement may contain such other provisions as the commission deems reasonable and proper for the security of the bondholders. * * *"

Pursuant to this authority there was carried into the trust agreement between the Commission and its Trustee, The Ohio National, certain sections, one of which, insofar as applicable, reads:

"Section 807:—No holder of any of the outstanding bonds shall have any right to institute any suit, action, mandamus or other proceeding in equity or at law for the execution of any trust hereunder * * * or any right under the Turnpike Act or the laws of Ohio, unless such holder previously shall have given to the Trustee written notice of * * * breach of trust or duty on account of which such suit, action * * * is to be taken, **and unless the holders of not less than ten per centum (10%) in principal amount of the bonds then outstanding shall have made written request of the Trustee** after the right to exercise such powers or right of action, * * *, shall have accrued, * * *; and such notification, request

\* \* \* are hereby declared in every such case, at the option of the trustee, to be conditions precedent to the execution of the powers and trusts of this Agreement or for any other remedy hereunder or under the Turnpike Act or the laws of Ohio. It is understood and intended that no one or more holders of the bonds hereby secured shall have any right in any manner whatever by his or their action \* \* \* to enforce any right hereunder or under the Turnpike Act or the laws of Ohio with respect to the bonds or this agreement, **except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided.** \* \* \*" (Emphasis ours.)

Inasmuch as plaintiff represents less than ten per centum of the Turnpike Bonds outstanding, it is clear that unless the conditions precedent to the institution of suit as set out in Section 807 are invalid, he has not the capacity to maintain this action.

Plaintiff asserts that the foregoing restrictions on the right of a bondholder to sue are either inapplicable or invalid, that the restrictions tend to deprive a court of its ordinary, necessary and proper jurisdiction.

At the time the demurrer to the amended petition was decided it was the claim of plaintiff that he had no notice of the conditions in Section 807 precedent to his right to institute suit. He may not be heard to assert this lack of notice or knowledge of these prerequisite qualifications of a bondholder to institute an action for the benefit of bondholders because upon the bonds issued to him, upon which he claims his right to proceed, are carried the terms of Section 807, which we have quoted.

When the demurrer on the ground of lack of capacity to sue was sustained, there was no averment that the proviso of Section 807 just quoted, was not proper or such as customarily carried in trust indentures and agreements. It must be borne in mind, if the provision as to notice of holders of bonds of the percentage of value essential to the institution of a bondholders' suit is valid, that alone would support the holding that plaintiff had not the capacity to sue. It is difficult to find that notice to the Trustee by the holders of bonds of the percentage requisite to suit affects the ordinary or proper jurisdiction of a court of equity. If the requisite amount was so inordinate or so great as to shock the conscience of the Court, it might be held to affect its jurisdiction. The great weight of authority supports the right to incorporate the condition which we are considering as an essential to the authority to maintain bondholders action in trust agreements. The exceptions to this right are cases of fraud, adverse interest of trustee or manifest breach of trust.

Plaintiff cites **Perry v. The Darlington Fireproofing Co., 76 Oh Ap 101.** The limitation there pronounced on restrictive provisions of a mortgage in the so-called "no action clauses" was, no doubt, made with respect to the facts developed in that case. Judge Sherick at page 104 of the opinion recognized the general rule, as announced in the annotation in 108 A. L. R. 88, 90, that:

"Reasonable restrictions on the right of action of an individual holder of one or more of a series of corporate bonds or other obligations, either in respect of the obligation or the security or of both, have generally been held to be valid and enforceable."

He continues by citing from the text, at page 94 of the annotation, wherein it is said that such restrictions must be strictly construed because in conflict with the common law and that they are effective only when clear and free from doubt. He cites in support of the general rule, 19 Corpus Juris Secundum, 758, Section 1163, and 13 Am. Jur. 851, Section 863. Limitations in excess of the number required as a prerequisite to suit in the indenture here, are supported in Allan v. Moline Plow Co., 14 F. 2d, 912; Relmar Holding Co. v. Paramount Publix Corporation, 236 N. Y. S. 76; Levy v. Paramount Publix Corporation, 266 N. Y. S. 271; Kelly v. Prudence Co., 259 N. Y. S. 59; Frobisher v. Tudor Corp., 114 N. J. Eq. 470, 168 Atl. 855, contra Hoyt v. E. I. DuPont de Nemours Powder Co. (N. J.) 102 Atl. 666. In Dietzal v. Anger, 8 Cal. 2d 373, 65 Pac. 2d 803, it is said that the great majority of cases hold the restrictive provisions valid on the theory that bondholders have, by agreement among themselves, imposed a condition precedent to the exercise of the right of anyone of them to sue individually.

Plaintiff claims in his briefs that defendant Trustee acted in bad faith by honoring requisitions of the Commission for payments to Land Title, in that the Trustee knew that the statement of the Commission was false; that there had not been filed with it notice of a "claim affecting the right to receive payment of any of the monies payable to any of the corporations named in such requisition which has not been released or will not be released simultaneously with such payment." The pleading of plaintiff in the fourth cause of action of the amended petition is:

"33. That the matters set forth in paragraphs 11, 12 and 13 of this petition were reported upon at length in the public press throughout Ohio and as a consequence became matters of public interest and information; that said matters were, because of their nature, of a special interest to attorneys and title guarantee companies, and were discussed generally among such attorneys and persons associated with such companies; that plaintiff is informed and believes that defendant, Ohio National, through its officers, was informed by member of Commission, persons associated with Land Title, their attorneys, or any or all of them, of the matters set forth in paragraphs 11, 12 and 13."

Paragraph 13 is without significance because it refers to the order entered in the first suit at which time payment had been made to the Land Title and in which suit the trial judge had refused to require the Land Title to repay the money which it had received under its contract with the Commission. Paragraphs 11 and 12 relate to the advice which the attorneys in the first case gave to certain defendants, other than the Ohio National, as to the illegality of the contract between Land Title and the Commission, and paragraph 12 relates to the institution of the first action.

Assuming that Ohio National had knowledge that the contentions, advice and action in the first suit constituted a "claim" which was contrary to the statement made by the Commission in its requisition to the Ohio National, its action on the requisitions and failure to sue because of its knowledge was not an illegal act on its part as pleaded, much less

an indication of bad faith.  The first suit was not lis pendens as to Ohio National because not a claim against any specific property.  Ohio National was in contractual relations with the Commission and under legal obligation to act upon requisitions properly certified by the Commission.

Plaintiff, after the sustaining of the demurrers to the amended petition, moved to amend the first cause of action thereof, by stating:

"Trust agreements or trust indentures securing bonds or debentures of corporations customarily restrict the individual right of action by bondholders only regarding suits for the foreclosure of the indenture in question, or for actions upon or in respect to the indenture or for actions which affect, disturb, or prejudice the lien of the indenture in question.  Such trust agreements do not customarily restrict bondholders from the enforcement of ordinary equitable rights under the common law to protect the res equitably and ratably for the benefit of all bondholders.  **To the extent that said section 807 purports to restrict the rights of turnpike bondholders to 'enforce any right . . . under the laws of Ohio' it is more restrictive than such customary indentures.**"  (Emphasis ours.)

The court tested the proposed amendment as upon demurrer and rejected the contention of plaintiff that the language of Section 807, "as is customary in trust agreements * * * of corporations" is a limitation precluding the enforcement of such language and held that it is restrictive only.  Frankly, we do not know what this language means.  It is our opinion, however, that it is nothing more than a recognition, parenthetical in character, that it is customary in trust agreements to restrict the individual rights of bondholders as to suits derivative in character.  Usages are presumed to be reasonable and the person attacking them has the burden of showing their unreasonableness, 55 Am. Jur. 312, Section 51.

Without respect to the true meaning of the language under consideration the trial judge did not err in overruling the motion for leave to amend for two reasons.  One, there is no claim in the assignment of the errors that the Court abused its discretion in overruling the motion.  Two, plaintiff in his original petition had pleaded substantiallly as in the proposed amendment and on motion it had been stricken as a conclusion of law.  The proposed amendment did not conform to the court's ruling.  It sets up no facts upon which the averment is predicated that the restriction in the indenture is more restrictive than is customary in such indentures.

The second ground of the demurrers is that the amended petition does not state a cause of action.  The reason assigned in support of the demurrer is that the money paid to the defendant, Land Title, for services performed by it under the void contract with the Commission was paid under a mistake of law.

We, as did Judge Leach, agree with this contention.  He discusses and considers it at length and cites and comments on several cases which support his position.  Plaintiff attempts to distinguish the facts he pleads from those found in the cited cases, in that, in them, one of

the parties, the payee, in the transaction was innocent and here, Land Title, at least, was not in that status.

We are especially familiar with the case of **State, ex rel. Dickman v. Defenbacher, 151 Oh St 391,** which this Court reviewed. The difference upon which plaintiff relies is found in the facts in the Defenbacher case because there the party to which the money was paid was innocent of any knowledge of the illegality of the legislation under which the payment was made. However, it is evident from the per curiam in the Defenbacher case that notwithstanding any illegality of the appropriations and disbursements involved in the controversy, it held that the money might not be recovered. The controlling principle announced by the Court, without qualification, respecting liability for repayment of payments made by mistake of law, is announced at page 395 of the Defenbacher opinion.

"In the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay. **31 O. Jur. 233, et seq., Section 162, et seq.,** and cases cited in the notes."

"In the instant case there is no claim of fraud, duress, compulsion or mistake of fact as to the payment made; there is merely the claim that the law forbade such payments. Under the circumstances described, no recovery amounts disbursed may be had."

We are not unmindful of the equities that are to be found in the plaintiff's case. It is anomalous that the maxim "Ignorance of the law excuses no one" should be employed to protect a culpable party who urges such principle in exoneration of his liability. But we are bound by the Defenbacher case which is the last word of our Supreme Court and we certainly cannot say and, of course, would not say, that it departs from the general rule that "Mistake of law is not a ground of equity jurisdiction," 30 C. J. S. 378, Par. 47.

On this appeal, the test is not only whether the Court erred in any particular assigned, but, whether such error was prejudicial to the plaintiff. Upon this test, if we had found any error established, we would be met with the impact of Judge Harter's opinion and the judgment thereon in the action wherein Steer and Adair were the parties-plaintiffs and the Land Title and the Commission were the parties defendants. We recognize that the parties-plaintiffs were different than in this case and that res judicata could not be given application. But, the Land Title was a party and the substantive right upon which plaintiff proceeds in this case was the same as in the former case, viz., the invalidity of the contract between Land Title and the Commission because of the illegal practice of law in its performance and the relief sought was to compel the return by Land Title of the money paid to it. Both issues were decided and carried into the judgment. The first, in favor of the plaintiff. The second, in favor of the defendant, denying the right of plaintiffs to compel the return by Land Title to the Commission of the money paid to Land Title. From this judgment. neither party prosecuted an appeal and it remains a subsisting judgment, unreversed and unmodified.

In Plaintiff's brief, this significant statement is made:

"Plaintiff would admit that if he has no cause of action against defendant Land Title, he has no cause of action against defendant Commission."

It might also be urged, that if he has no cause of action against Land Title for the repayment of the money received by it under the illegal contract, as held by the former judgment, he has no cause of action against the defendant Trustee, The Ohio National.

We find no error assigned well made. The judgment will be affirmed.

PETREE, PJ, MILLER, J, concur.